## HOLMBERG ET AL. *v.* ARMBRECHT ET AL.

No. 505.   Argued February 1, 1946.—Decided February 25, 1946.

*Clarence Fried* argued the cause for petitioners.   With him on the brief was *Edmund Burke, Jr.*

*Edgar M. Sousa* argued the cause and filed a brief for respondents.

Briefs were filed as *amici curiae* by *Solicitor General McGrath, Robert L. Stern, Roger S. Foster, Milton V. Freeman* and *Arnold R. Ginsburg* for the United States, and by *Saul J. Lantz* and *Isadore H. Cohen* for the Trustees of Central States Electric Corporation, urging reversal.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This is a suit in equity by petitioners on behalf of themselves and all other creditors of the Southern Minnesota Joint Stock Land Bank of Minneapolis to enforce the liability imposed upon shareholders of the Bank by § 16 of the Federal Farm Loan Act, equal to one hundred percent of their holdings. 39 Stat. 360, 374, 12 U. S. C. § 812.[1] The Bank closed its doors in May, 1932. Its debts exceeded its assets by more than $3,000,000, the amount of its outstanding stock. Suit was accordingly brought in the United States District Court for the District of Minnesota for determining and collecting the assessment due under § 16. *Holmberg* v. *Southern Minnesota Joint Stock Land Bank,* 10 F. Supp. 795. Armbrecht, a New York stockholder, was sued there. The suit failed on procedural grounds and was dismissed without prejudice to further action. *Holmberg* v. *Anchell,* 24 F. Supp. 594, 598. Not until 1942, so it is alleged, did petitioners learn that Jules S. Bache had concealed his ownership of one hundred shares of the Bank stock under the name of Charles Armbrecht. The present action against Armbrecht and Bache was begun in the Southern District of New York in November, 1943. Bache died during pendency of the suit and his executors were substituted as parties.

The respondents made two defenses: (1) they invoked a New York statute of limitation barring such an action after ten years, New York Civil Practice Act, § 53; (2) they urged laches, claiming that petitioners had unduly

---

[1] "Shareholders of every joint stock land bank organized under this Act shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such bank to the extent of the amount of stock owned by them at the par value thereof, in addition to the amount paid in and represented by their shares."

delayed commencement of the suit. Neither defense was sustained in the District Court, and judgment went against the respondents. The judgment was reversed by the Circuit Court of Appeals. 150 F. 2d 829. That court did not reach the defense of laches because it held, relying on *Guaranty Trust Co.* v. *York,* 326 U. S. 99, that the New York statute of limitation was controlling and that the mere lapse of ten years barred the action. Since the case raises a question of considerable importance in enforcing liability under federal equitable enactments, we brought it here for review. 326 U. S. 712.

In *Guaranty Trust Co.* v. *York, supra,* we ruled that when a State statute bars recovery of a suit in a State court on a State-created right, it likewise bars recovery of such a suit on the equity side of a federal court brought there merely because it was "between Citizens of different States" under Art. III, § 2 of the Constitution. The amenability of such a federal suit to a State statute of limitation cannot be regarded as a problem in terminology, whereby the practical effect of a statute of limitation would turn on the content which abstract analysis may attribute to "substance" and "procedure." We held, on the contrary, that a statute of limitation is a significant part of the legal rules which determine the outcome of a litigation. As such, it is as significant in enforcing a State-created right by an exclusively equitable remedy as it is in an action at law. But in the *York* case we pointed out with almost wearisome reiteration, in reaching this result, that we were there concerned solely with State-created rights. For purposes of diversity suits a federal court is, in effect, "only another court of the State." *Guaranty Trust Co.* v. *York, supra,* at 108. The considerations that urge adjudication by the same law in all courts within a State when enforcing a right created by that State are hardly relevant for determining the rules which bar enforcement of an equitable right created not by a State legislature but by Congress.

If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitation is definitive. See, *e. g., Herget* v. *Central Bank Co.,* 324 U. S. 4. The rub comes when Congress is silent. Apart from penal enactments, Congress has usually left the limitation of time for commencing actions under national legislation to judicial implications. As to actions at law, the silence of Congress has been interpreted to mean that it is federal policy to adopt the local law of limitation. See *Campbell* v. *Haverhill,* 155 U. S. 610; *Chattanooga Foundry & Pipe Works* v. *Atlanta,* 203 U. S. 390; *Rawlings* v. *Ray,* 312 U. S. 96. The implied absorption of State statutes of limitation within the interstices of the federal enactments is a phase of fashioning remedial details where Congress has not spoken but left matters for judicial determination within the general framework of familiar legal principles. See *Board of Comm'rs* v. *United States,* 308 U. S. 343, 349–50, 351–52.

The present case concerns not only a federally-created right but a federal right for which the sole remedy is in equity. *Wheeler* v. *Greene,* 280 U. S. 49; *Christopher* v. *Brusselback,* 302 U. S. 500; *Russell* v. *Todd,* 309 U. S. 280, 285. And so we have the reverse of the situation in *Guaranty Trust Co.* v. *York, supra.* We do not have the duty of a federal court, sitting as it were as a court of a State, to approximate as closely as may be State law in order to vindicate without discrimination a right derived solely from a State. We have the duty of federal courts, sitting as national courts throughout the country, to apply their own principles in enforcing an equitable right created by Congress. When Congress leaves to the federal courts the formulation of remedial details, it can hardly expect them to break with historic principles of equity in the enforcement of federally-created equitable rights.

Traditionally and for good reasons, statutes of limitation are not controlling measures of equitable relief. Such statutes have been drawn upon by equity solely for the light they may shed in determining that which is decisive for the chancellor's intervention, namely, whether the plaintiff has inexcusably slept on his rights so as to make a decree against the defendant unfair. See *Russell* v. *Todd, supra,* at 289. "There must be conscience, good faith, and reasonable diligence, to call into action the powers of the court." *McKnight* v. *Taylor,* 1 How. 161, 168. A federal court may not be bound by a State statute of limitation and yet that court may dismiss a suit where the plaintiffs' "lack of diligence is wholly unexcused; and both the nature of the claim and the situation of the parties was such as to call for diligence . . ." *Benedict* v. *City of New York,* 250 U. S. 321, 328. A suit in equity may fail though "not barred by the act of limitations . . ." *McKnight* v. *Taylor, supra; Alsop* v. *Riker,* 155 U. S. 448.

Equity eschews mechanical rules; it depends on flexibility. Equity has acted on the principle that "laches is not like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties." *Galliher* v. *Cadwell,* 145 U. S. 368, 373; see *Southern Pacific Co.* v. *Bogert,* 250 U. S. 483, 488–89. And so, a suit in equity may lie though a comparable cause of action at law would be barred. If want of due diligence by the plaintiff may make it unfair to pursue the defendant, fraudulent conduct on the part of the defendant may have prevented the plaintiff from being diligent and may make it unfair to bar appeal to equity because of mere lapse of time.

Equity will not lend itself to such fraud and historically has relieved from it. It bars a defendant from setting up

such a fraudulent defense, as it interposes against other forms of fraud. And so this Court long ago adopted as its own the old chancery rule that where a plaintiff has been injured by fraud and "remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party." *Bailey* v. *Glover*, 21 Wall. 342, 348; and see *Exploration Co.* v. *United States*, 247 U. S. 435; *Sherwood* v. *Sutton*, 5 Mason 143.

This equitable doctrine is read into every federal statute of limitation. If the Federal Farm Loan Act had an explicit statute of limitation for bringing suit under § 16, the time would not have begun to run until after petitioners had discovered, or had failed in reasonable diligence to discover, the alleged deception by Bache which is the basis of this suit. *Bailey* v. *Glover, supra; Exploration Co.* v. *United States, supra; United States* v. *Diamond Coal Co.*, 255 U. S. 323, 333. It would be too incongruous to confine a federal right within the bare terms of a State statute of limitation unrelieved by the settled federal equitable doctrine as to fraud, when even a federal statute in the same terms would be given the mitigating construction required by that doctrine.

We conclude that the decision in the *York* case is inapplicable to the enforcement of federal equitable rights. The federal doctrine applied in *Bailey* v. *Glover, supra,* and in the series of cases following it, governs. When the liability, if any, accrued in this case, *cf. Rawlings* v. *Ray, supra,* at 98, and whether the petitioners are chargeable with laches, see *Foster* v. *Mansfield, C. & L. M. R. Co.*, 146 U. S. 88, 99; *Southern Pacific Co.* v *Bogert, supra,* at 488, are questions as to which we imply no views. We

leave them for determination by the Circuit Court of Appeals to which the case is remanded.

*Reversed and remanded.*

Mr. Justice Jackson took no part in the consideration or decision of this case.

Mr. Justice Rutledge, concurring.

I agree with the result and with the opinion, reserving however any intimation, explicit or implied, as to the full scope to which the doctrine of *Guaranty Trust Co.* v. *York,* 326 U. S. 99, may be applied in diversity cases. Many of the considerations now stated by the Court for refusing to extend that doctrine to cases concerning federally created rights, relating to the flexibility of remedies in equity either to cut down or to extend the state statutory period of limitations, seemed to me to be applicable whenever a federal court might be asked to extend the aid of its equity arm, whether in its diversity jurisdiction or other. The ruling in the *York* case however may be accepted generally for diversity cases and, moreover, rejected for extension to cases of this sort, without indicating that there may not be some cases even of diversity jurisdiction to which federal courts may not be required to apply it. With this reservation I join in the Court's action.