**HOUSEWARE SALES CORPORATION et al. v. QUAKER STRETCHER CO. et al.**

**Civ. A. No. 4191.**

District Court, E. D. Wisconsin.

Feb. 5, 1947.

Sullivan & Lauritzen, of Milwaukee, Wis., for plaintiffs.

Fischer, Bosgraf & MacKenzie, of Chicago, Ill., for defendants.

DUFFY, District Judge.

For reasons of brevity certain of the parties to this action will hereafter be referred to as follows: plaintiff Houseware Sales Corporation as "Houseware," defendant Quaker Stretcher Company as "Stretcher," defendant Quaker Industries, Inc., as "Industries," and defendant Quaker Foundation, Inc., as "Foundation."

There are pending in this court two other actions started prior to the commencement of this one, involving some of the same parties. Civil Action No. 3856 involves a claim of Houseware against Stretcher and Walter Block, and damages are sought in excess of $700,000 based principally upon commissions allegedly due under a sales contract and for an alleged breach of such contract. In Civil Action No. 3998 the plaintiff Garner asks for an accounting by Stretcher and for judgment in whatever sum may be found due. Although the instant suit is a separate action, as a practical matter it is ancillary to the two suits mentioned.

Relief asked by plaintiffs in the instant action includes appointment of a receiver of Stretcher's assets and business pending a determination of the other two actions heretofore referred to; an injunction restraining all defendants from making any further dispositions of Stretcher's property pending determination of the other two actions; an injunction restraining all defendants from making any disposition of any property or avails from property received by them through the alleged fraudulent transfers and preferences; an adjudication that the alleged transfers of Stretcher's assets to any of its co-defendants are void and should be set aside, and that satisfaction of any judgments secured by the plaintiffs be directed to be made out of such assets.

After allegations of diversity of citizenship and amount in controversy, the complaint herein alleges that Stretcher is insolvent, and that Stretcher conspired with its co-defendants to hinder, delay and defraud the plaintiffs as its creditors and to prevent any of Stretcher's property from being subjected to the plaintiffs' claims and in consequence to render ineffectual any judgments which might be secured by plaintiffs in the two actions previously mentioned. The complaint then specifies various transfers which are alleged to be fraudulent, such as the sale by Stretcher to Industries of certain dray carts at a price below the cost of manufacture; the right given to Industries to use the trademark "Quaker" without paying a fair and adequate consideration; and certain lumber transactions between Stretcher and Industries. The complaint further charges that Industries was organized for the purpose of and used as a device for drawing to it the assets of Stretcher. The complaint further alleges that, although under no legal or equitable obligation to do so, Stretcher has paid since January 1, 1946, a sum in excess of $70,000 to defendants Scharnick, as trustee of the Block Trust, and to Hattie J. Block, as purported royalties on patents which are legally and equitably the property of Stretcher. The complaint designates certain additional transfers from Stretcher to Hattie Block and Walter Block claiming they were made without Stretcher receiving a fair and adequate consideration therefor.

The complaint avers that the effect of the acts and transactions detailed left the property remaining in Stretcher's hands unreasonably small for the further conduct of

its business and produced a shortage of funds requiring it to pledge its accounts receivable along with its machinery, furniture, and fixtures to a finance company in order to meet cash requirements for current operations.

After re-alleging that Stretcher is and has been for several months insolvent, and that the acts and transactions mentioned were accomplished with intent to hinder, delay and defraud plaintiff's and Stretcher's other creditors, the complaint asserts that the appointment of a receiver is necessary in order to prevent continued dissipation of its assets and further fraudulent transfers and preferences, lest the plaintiffs be unable to secure relief in the two previously commenced actions, which are still pending.

All of the defendants interpose an answer twenty-three pages in length. The first defense set forth is that plaintiffs' alleged claims have not been reduced to judgment and that plaintiffs have no lien of any kind upon the assets of the defendants; that plaintiffs have no right to the appointment of a receiver or to any of the relief prayed for in the complaint; and that the complaint should be dismissed.

The matter now before the court is the motion of the defendants to dismiss the complaint and suit on the ground that the court is without jurisdiction to grant the relief sought. The chief emphasis in defendants' brief is that in as much as plaintiffs are merely alleged creditors, whose claims have not yet been established, a receiver cannot be and should not be appointed.

Chapter 242, Wis.Stats., is designated "Fraudulent Conveyance Act." Section 242.01(3) defines a creditor as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." Under Sec. 242.02(1) a person (which includes a corporation) "is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and mature." Sec. 242.10, Wis.Stats., reads: "Where a conveyance made or obligation incurred is fraudulent as to a creditor whose claim has not matured he may proceed in a court of competent jurisdiction against any person against whom he could have proceeded had his claim matured, and the court may, (a) Restrain the defendant from disposing of his property, (b) Appoint a receiver to take charge of the property, (c) Set aside the conveyance or annul the obligation, or (d) Make any order which the circumstances of the case may require."

Defendants here contend for a rule which prior to Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, was well established, namely, that a simple contract creditor cannot come into a federal court of equity to pursue the property of a debtor fraudulently transferred. It is stated in 45 Am.Jur. 20, "It has been ruled that a creditor must reduce his claim to judgment before he can be entitled to a receiver, and this rule has been applicable in federal courts irrespective of requirements of state legislation."

The principal case relied upon by defendants is Pusey & Jones Co. v. Hanssen, 261 U.S. 491, 43 S.Ct. 454, 67 L.Ed. 763. That action was brought by simple contract creditor who based his right to the appointment of a receiver upon a statute of the State of Delaware which permitted a receiver to be appointed for an insolvent corporation on the suit of a simple contract creditor. The lower court appointed a receiver but the Supreme Court reversed, saying (261 U.S. at pages 497, 498, 43 S.Ct. at page 456, 67 L.Ed. 763): "That a remedial right to proceed in a federal court sitting in equity cannot be enlarged by a state statute is likewise clear. * * * The federal court may therefore be obliged to deny an equitable remedy which the plaintiff might have secured in a state court. * * *"

In considering whether Pusey & Jones v. Hanssen, supra, is still the law and if so whether it should be applied here we must keep in mind that the case at bar is pending in this court by reason of diversity of citizenship of the parties. We must likewise consider that the Pusey v. Hanssen case was decided some years prior to the decision of Erie Railroad Co. v. Tompkins, supra.

In Russell v. Todd, 309 U.S. 280, 294, 60 S.Ct. 527, 84 L.Ed. 754, the court stated

that it there had no occasion to consider the extent to which federal courts in administering equitable remedies are bound to follow State statutes and decisions affecting those remedies. However, in Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231, the court attempted to meet that issue. In as much as that decision specifically referred to the Pusey v. Hanssen case in a footnote, and did not expressly overrule it, a detailed consideration of the decision in the Guaranty Trust case is required. The court stated the question as follows (326 U.S. at page 101, 65 S.Ct. at page 1466, 89 L.Ed. 2079, 160 A.L.R. 1231):

"* * * Our problem only touches transactions for which rights and obligations are created by one of the States, and for the assertion of which, in case of diversity of the citizenship of the parties, Congress has made a federal court another available forum.

"Our starting point must be the policy of federal jurisdiction which Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, embodies. * * *" The court further stated in its opinion (326 U.S. at page 109, 65 S.Ct. at page 1470, 89 L.Ed. 2079, 160 A.L.R. 1231): "* * * In essence, the intent of that decision (Erie R. Co. v. Tompkins) was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of litigation, as it would be if tried in a State court. The nub of the policy that underlies Erie R. Co. v. Tompkins is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away, should not lead to a substantially different result. * * *" And on page 110 of the same opinion in 326 U.S., on page 1470 of 65 S.Ct., 89 L.Ed. 2079, 160 A.L.R. 1231 the court said: "Erie R. Co. v. Tompkins has been applied with an eye alert.to essentials in avoiding disregard of State law in diversity cases in the federal courts. * * *" And on page 111 of 326 U.S., on page 1471 of 65 S.Ct., 89 L.

Ed. 2079, 160 A.L.R. 1231 the court stated: "To make an exception to Erie R. Co. v. Tompkins on the equity side of a federal court is to reject the considerations of policy which, after long travail, led to that decision. * * *"

Justice Frankfurter who wrote the opinion for the court in the Guaranty Trust Co. case, supra, also wrote the opinion in Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 162 A.L.R. 719, and the latter case shed some additional light on the rule laid down in the Guaranty Trust case. The court said (327 U.S. at page 394, 66 S.Ct. at page 583, 162 A.L.R. 719): "In Guaranty Trust Co. v. York, supra, we ruled that when a State statute bars recovery of a suit in a State court on a State-created right, it likewise bars recovery of such a suit on the equity side of a federal court brought there merely because it was 'between citizens of different States' under Article III, § 2, of the Constitution. * * *" The court said further (327 U.S. at page 395, 66 S.Ct. at page 584, 162 A.L.R. 719): "The present case concerns not only a federally-created right but a federal right for which the sole remedy is in equity. * * * We do not have the duty of a federal court, sitting as it were as a court of a State, to approximate as closely as may be State law in order to vindicate without discrimination a right derived solely from a State. * * *"

Some of the language in the Guaranty Trust company case seems to me somewhat inconsistent with the conclusion reached in that case. For instance, 326 U.S. on page 106, 65 S.Ct. on page 1468, 89 L.Ed. 2079, 160 A.L.R. 1231, the court said: "* * * State law cannot define the remedies which a federal court must give simply because a federal court in diversity jurisdiction is available as an alternative tribunal to the State's courts. * * *" A footnote is there given to the case of Pusey v. Hanssen, supra.

However, I conclude that in order to follow what appears to be the attitude of the Supreme Court that as far as possible in shaping relief federal courts should conform to the laws of the State where suit is brought in a diversity of citi-

zenship case, defendants' motion to dismiss must be denied and the separate defense alleged in the answer must be overruled.