The **UNITED STATES** of America
v.
**WEST TEXAS STATE BANK.**
Civ. A. No. 5-63-5.

United States District Court
N. D. Texas,
Lubbock Division.
May 12, 1964.

Louis F. Oberdorfer, Asst. Atty. Gen., Washington, D. C., Barefoot Sanders, U.

S. Atty., Charles D. Cabaniss, Asst. U. S. Atty., Dallas, Tex., for the United States.

Arch B. Gilbert, Brooks, Tarlton, Wilson & Gilbert, Fort Worth, Tex., for West Texas State Bank.

DOOLEY, District Judge.

This suit was filed January 14, 1963, and relates to a federally assessed withholding tax liability against a Texas corporation named, Bellaire Pipeline Contractors. The defendant, West Texas State Bank, had business contacts with said corporation and, in particular, made a substantial aggregate of loans to it over a period of time in 1955. The defendant bank later brought suit against the Pipeline Corporation and others in a state court of Colorado to recover, for one thing, the unpaid balance of said bank loans, and one outcome thereof was evidenced by a stipulation and written agreement, dated August 18, 1955, which reads in material part, as follows:

"(2) Bellaire Pipeline Contractors, a Texas corporation, agrees to and hereby does sell, transfer, assign and set over unto West Texas State Bank, plaintiff above named, all of its right, title and interest in and to the accounts receivable, equipment and all other property of whatsoever kind or nature, both real and personal, including any and all amounts now due from the Mountain States Telephone & Telegraph Company, defendant, and Cable Construction Company, now owned by it, for and in consideration of the payment to it of the sum of Twenty Thousand and No/100 Dollars ($20,000.00) in cash, the receipt of which is hereby acknowledged, and of the indemnity agreement, covenants and releases hereinafter referred to."

"(3) West Texas State Bank agrees to indemnify Bellaire Pipeline Contractors, a Texas corporation, and to pay any and all debts, liabilities and other obligations, including corporation income taxes, if any, of Bellaire Pipeline Contractors, * * incurred or due and owing by the Bellaire Pipeline Contractors, * *, as of the date of this instrument * * * *."

Some of the parties, other than said Pipeline corporation, agreed in turn to indemnify the defendant bank in a measure substantially equal to the bank's indemnity in behalf of said Pipeline corporation.

A further provision of the written stipulation and agreement states:

"Bellaire Pipeline Contractors, a Texas corporation, defendant in Cause No. 6688, heretofore filed in the District Court of Scurry County, Texas, 132nd Judicial District, agrees to file pleadings in said cause stating that all matters in controversy by and between West Texas State Bank and Bellaire Pipeline Contractors, a Texas corporation, have been settled and compromised, and any and all funds on deposit at the Houston National Bank shall be transferred to the West Texas State Bank."

The District Director of Internal Revenue at Austin, Texas, made an assessment on January 13, 1957, against Bellaire Pipeline Contractors for withholding taxes for the second quarter of 1955 in the total amount of $6,708.31, inclusive of taxes, plus penalties and interest to said assessment date, and such liability still remains wholly unpaid.

The defense rests on the contention that the suit in its entirety is barred by the Texas Statute of Limitations, being Article 5527 of Vernon's Civil Statutes of Texas, which, in pertinent part, reads as follows:

"There shall be commenced and prosecuted within four years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

"1. Actions for debt where the indebtedness is evidenced by or founded upon any contract in writing."

The plaintiff, on the other hand, says that the governing statute of limitations is the 1954 Internal Revenue Code, § 6502, which provides that a suit brought "within 6 years after the assessment of the tax," is timely filed.

Each party has filed a motion for summary judgment and the Court is called upon to determine between the said two motions.

Naturally, the defendant has taken the initiative in the argument and relies very heavily on the case of United States v. Scott, 8 Cir., 167 F.2d 301, most particularly that part of the opinion quoted in the margin.[1]

■ That decision is regarded as decisive in this suit. The Government here, as in that case, puts itself in the shoes of a third party beneficiary under the familiar law of contracts and undertakes to compel the defendant bank's compliance with the agreement in the aforesaid writing of August 18, 1955, to pay the outstanding debts and liabilities of the Bellaire Pipeline Contractors.

The defendant interposes the Texas Statute of Limitations against the enforcement of its contractual engagement.

■ The plaintiff, in turn, challenges the efficacy of a state limitation to defeat a federal tax liability and, if the premise were right, that would be a sound position, but the Government has never assessed this tax against the defendant bank and cannot treat it as the taxpayer. In other words, the Government did not impose the tax on this defendant by its assessment thereof in 1957.

■ The defendant, however, implies too much in saying that the Government has failed to cite any tax case that would bear on the limitation question in this suit. Their assertion in mere words is correct, but beyond any fair doubt no state statute of limitation can supersede the federal statute of limitation in respect to the prosecution of a legally assessed and imposed federal tax against any given taxpayer, unless by leave of explicit federal law. This seems clear enough in the case of Holmberg v. Armbrecht, 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743, where the court says: "If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitation is definitive."

It may well be that the Scott case was defective in what was said about transferee liability. In fact, this point is raised in the text of one of the well known tax law treatises, as set out in the footnote.[2]

The opening statement herein reflects clearly that the defendant did receive

1. "The question is whether the six-year limitation fixed by 26 U.S.C.A. Int.Rev. Code, § 276(c), 53 Stat. 87, for bringing suits to collect income taxes after their assessment, is controlling of an action by the United States to recover on a contract between a third party and a taxpayer in which the third party, subsequent to a determination by the Commissioner of income tax deficiencies against the taxpayer and a redetermination by the Board of Tax Appeals (now the Tax Court), 'assumes and agrees also to pay all of the personal and individual debts and liabilities of [the taxpayer] now existing'.

\* \* \* \* \*

"We think the six-year limitation in 26 U.S.C.A. Int.Rev.Code, § 276(c), on collecting income taxes after assessment, has reference only to such liabilities for payment as are imposed upon a party by law and not to any liability which a party may voluntarily impose upon himself by contract so as to give the United States an additional and special right of action."

2. "In a questionable decision, one court has held that an express assumption of liability does not make a promissor a 'transferee'. Therefore, the statute of limitations upon collection is the period provided by local law for contract obligations, not the Code provision applicable to transferees. (cf. § 76.01) U. S. v. Scott [8 Cir.], 167 F.2d 301. In any event, a person does not become a 'transferee' by express contract with another, or by acts creating liability under local law, unless he receives assets of the taxpayer in connection with such contract or acts." Rabkin & Johnson, Vol. 5, § 73.07, page 7348.

valuable consideration by transfer from the taxpayer at the time of the written agreement of August 18, 1955. There seems to be some measure of probability that a transferor and transferee theory might have been tenable, but that is moot now and will be left to its own uncertainty.

The defendant's motion for summary judgment is granted and such a judgment should be presented promptly.