Elsie C. COBB, Plaintiff,

v.

Ruth D. PROKOP, et al., Defendants.

Civ. A. No. 81-3-T.

United States District Court,
D. Massachusetts.

Feb. 16, 1983.

William J. Lafferty, Boston, Mass., for plaintiff.

Marianne B. Bowler, Asst. U.S. Atty., Boston, Mass., for defendants.

## OPINION

TAURO, District Judge.

Plaintiff, Elsie C. Cobb, appeals the findings of the Merit Systems Protection Board (MSPB) which rejected her claim that she was improperly denied an employment promotion opportunity at the Veterans Administration Medical Center (V.A.) after her discharge from military service. Relying on the provisions of the Veteran's Reemployment Rights Act of 1974, 38 U.S.C. § 2021 *et seq.*, plaintiff has moved for summary judgment. The government, in turn, filed alternative motions to dismiss and for summary judgment.

### *Factual Background*

Elsie C. Cobb was employed as a GS–11 social worker at the V.A. in Jamaica Plain, Massachusetts from October 11, 1965 until January 24, 1971. At that time, with the permission of the V.A., Cobb enlisted in the U.S. Army Medical Service Corps. As a Captain in the Medical Corps, Cobb's duties included working at a drug and alcohol rehabilitation center in Korea where she provided counseling for combat troops who had developed drug addictions during their tours of duty in Vietnam. While still in Korea, Cobb learned that her supervisor at the V.A., Margaret Morgan, had passed away. Cobb realized that her supervisor's death left a GS–12 vacancy at the V.A. On June 18, 1975, she wrote to the Personnel Department at the V.A. indicating her desire to be considered for that vacancy. In a letter dated June 24, 1975, Personnel Officer Thomas J. Hogan informed Cobb that Mrs. Morgan's position had been "filled through Merit Promotion Procedures by one of the staff Social Workers some months ago."[1] Cobb did not pursue the matter any further at that time.

Cobb was reinstated at the V.A. on January 22, 1976 at the conclusion of her military tour of duty. She was restored to the same position which she had formerly held as a GS–11 social worker. At the time of her return to the V.A., Cobb complained to Personnel Officer Hogan and others that she believed her restoration to be unfair. She was convinced that the Personnel Office had not considered her for the GS–12 openings that arose while she was in the service, and for which she believed herself to be well qualified. In addition, Cobb claimed that the V.A. had failed to credit her with 146 hours of sick leave which she had accumulated prior to her departure. Though Cobb voiced her dissatisfactions a number of times, she was never informed that she was entitled to have her claims heard by the MSPB (or its predecessor, the Civil Service Commission). She came to believe that any further pursuit of these matters would be futile.

Cobb continued to work at the V.A. despite dissatisfaction over her restoration. She did nothing more regarding her complaints until the fall of 1979. At that time, she attended a U.S. Army Reserve Drill where she learned from an officer of the Judge Advocate General Corps that, as a veteran, she could appeal an improper restoration. As a result, Cobb began to make inquiries about possible avenues of appeal.

---

1. MSPB administrative record, 2/2/82, p. 15.

She spoke to personnel officers at a number of different agencies and eventually was referred to the U.S. Office of Personnel Management. A Personnel Staffing Specialist in that office, Helen Falkson Arnold, reviewed Cobb's case and suggested that she contact the MSPB. At that point, Cobb engaged an attorney who filed an appeal to the MSPB on December 5, 1979.

### THE PROCEDURAL BACKGROUND

On February 11, 1980 the Boston Field Office of the MSPB rendered its decision and denied Cobb's claim that she had been improperly refused an employment promotion opportunity. It dealt with the sick leave issue in a separate opinion. The Field Office noted that under 5 C.F.R. § 353.-401(a)(iv) (1976), "If an employee considers that he has been improperly restored, he may appeal to the Commission not later than fifteen calendar days after his restoration." That fifteen day limit may be extended under certain circumstances.

> The Appeals Authority may extend the time limit on an appeal when the appellant shows that he (she) was not notified of the time limit and was not otherwise aware of it, or that he (she) was prevented by circumstances beyond his (her) control from appealing within the time limit. When an appellant has not been notified of a right of appeal, the Appeals Authority will accept an appeal only when the appellant has exercised due diligence in discovering and pursuing the administrative appeal available. 5 C.F.R. § 772.-302(b) (1976).

The Field Office found that plaintiff had not been informed of her appeal rights. At the same time, it ruled that she had not exercised due diligence in discovering those rights, in that she had left many possible avenues of inquiry unexplored. Reasoning that "ignorance of the law is no excuse," and noting the passage of almost four years between the time of her restoration and the commencement of her appeal, the Boston Field Office concluded that plaintiff's appeal was untimely under 5 C.F.R. § 772.302

(1976). It concluded, further, that the four year delay barred plaintiff's appeal because of laches.

Cobb appealed this finding on March 5, 1980. The Appeals Council of the MSPB affirmed the decision of the Boston Field Office in its final ruling of January 27, 1982. The Appeals Council, however, reached its conclusion on very different grounds. It found, *sua sponte,* that at the time plaintiff wrote to the V.A. Personnel Office expressing her interest in the job vacancy, she had served more than four years in military service. The Council concluded that plaintiff was not entitled to be considered for the vacancy because 38 U.S.C. § 2024 provides that a person whose military service exceeds 4 years is not entitled to restoration or reemployment. The 4 year limitation may be extended if "such person was unable to obtain orders relieving such person from active duty." *Id.* The Appeals Council concluded that, at the time the vacancy was filled, the V.A. was not aware that Cobb was unable to obtain orders relieving her from active duty. "Since the vacancy arose during appellant's fifth year of service, appellant's right to be considered for the promotion had expired."[2] Having made this ruling, the Council held that it did not have to reach the questions of timeliness and laches which had formed the basis of the Field Office's decision.

The Boston Field Office of the MSPB ruled as to plaintiff's claim of sick leave credit on Dec. 20, 1979. The Board decided that it did not have appellate jurisdiction over the matter. Cobb appealed this finding. On December 3, 1980, the Appeals Council of the MSPB determined that the appeal did not meet its criteria for reviewability and, thus, it left the Field Office finding undisturbed. The Board's final rulings on each of these claims served to exhaust plaintiff's administrative remedies.

### Jurisdiction

■ The government contends that the court lacks subject matter jurisdiction. It

---

**2.** MSPB administrative record, 2/2/82 p. 72.

points out that since enactment of the Civil Service Reform Act of 1978, (CSRA) Pub.L. No. 95–454, 92 Stat. 1111, appeals from final rulings of the MSPB are no longer to be brought before the U.S. District Court but, rather, are to be filed with either a U.S. Court of Appeals or the U.S. Court of Claims. The government takes the position that this case is controlled by the new CSRA. This court concludes that the government's position is incorrect.

The CSRA became effective on January 11, 1979 but it is inapplicable to administrative cases pending prior to its effective date.

> No provision of this Act shall affect any administrative proceedings pending at the time such provision takes effect. Orders shall be issued in such proceedings and appeals shall be taken therefrom as if the Act had not been enacted.

Pub.L. No. 95–454, § 902(b) 92 Stat. 1111 (5 U.S.C.A. § 1101 (West Supp.1982)). This court's jurisdiction hinges, therefore, on the question of whether an administrative proceeding was pending in this matter prior to January 11, 1979.

The MSPB has promulgated an interpretive regulation concerning the CSRA's savings clause.

> No provision of the Civil Service Reform Act shall be applied by the Board in such a way as to affect any administrative proceeding pending at the effective date of such provision. "Pending" is considered to encompass existing agency proceedings, and appeals before the Board or its predecessor agencies, that were subject to judicial review or under judicial review on January 11, 1979, the date on which the Act became effective. An agency proceeding is considered to exist once the employee has received notice of the proposed action.

5 C.F.R. § 1201.191(b) (1982).

An agency's notice to remove an employee, issued prior to the effective date of the CSRA has been held to constitute "existing agency proceedings." *Kyle v. ICC,* 609 F.2d 540, 542 (D.C.Cir.1979). In *Kyle* it was therefore determined that, even though the MSPB had rendered its decision after the effective date of the amended CSRA, its findings were subject to judicial review under the older statute. *Id.* In another instance reviewed by the *Kyle* court, an employee of the Department of Health, Education and Welfare was removed to a lower grade position within the Department prior to the January 11, 1979 effective date of the new Act. The employee appealed that removal on January 29, 1979. Despite the fact that the appeal was taken after the new Act's effective date, the locus of judicial review was controlled by the old statute. *Id.* at 542 n. 1. A reduction in pay grade prior to the effective date of the new Act has also been deemed an "existing agency proceeding." *Karahalios v. Defense Language Institute,* 534 F.Supp. 1202, 1206 n. 3 (N.D.Cal.1982).

Here, the V.A. restored Cobb to a GS–11 position on January 22, 1976. This "existing agency proceeding" that gave rise to Cobb's appeal to the MSPB antedated the effective date of the CSRA. By definition, therefore, it was a pending administrative proceeding whose forum for judicial review is controlled by the older statute, which posits jurisdiction in the U.S. District Court.

## *Discussion*

### A. Findings of the Appeals Council

■ The Veterans Reemployment Rights Act, 38 U.S.C. § 2021 *et seq.* (the Act) creates important rights and remedies for veterans returning from military duty to their former places of employment. Under the Act, employees who join the Armed Forces are entitled to all the privileges and incidences of their employment despite their absence. Upon reemployment, any individual covered by the statute,

> should be so restored or reemployed in such manner as to give such person such status in the person's employment as the person would have enjoyed if such person had continued in such employment continuously from the time of such person's entering the Armed Forces until the time of such person's restoration to such employment, or reemployment." 38 U.S.C. § 2021(b)(2).

Employees may not be denied promotions or other advantages because of their military service. Section 353.201(a) of 5 C.F.R. (1976) explicitly delineates the obligations of Executive branch agencies which employ veterans.

> Each agency shall consider every employee absent because of compensable injury or military duty for all promotions for which he would be considered were he not absent. A promotion based on this consideration is effective on the date it would have been made if the employee were not absent. *Id.*

In light of the clear statutory mandate protecting the reemployment rights of returning veterans, the MSPB findings warrant careful scrutiny.

The Appeals Council's conclusion turns on its determination as to when a GS–12 position became available. A review of correspondence between Cobb and the Personnel Officer at the V.A. led the Appeals Council to conclude that a GS–12 vacancy arose during Cobb's fifth year of military service, sometime after January 24, 1975. The administrative record, however, does not support this conclusion.

Nowhere in the administrative record is there a specific indication as to when Margaret Morgan died. On June 27, 1975, Personnel Officer Hogan informed Cobb that Ms. Morgan's position had been filled "some months ago." If the position had been *filled* some months prior to June 24, 1975, it is not unreasonable to infer that the vacancy *occurred* at an even earlier time, quite possibly before January 24, 1975. Further, the Appeals Council made no real effort to determine when this vacancy occurred, or whether other GS–12 vacancies may have occurred during plaintiff's first four years in military service. Instead, *sua sponte,* the Council decided that any vacancy could only have occurred after plaintiff's fourth year of service. To the contrary, plaintiff has alleged here that Margaret Morgan died in November of 1974. Further, plaintiff has asserted that another V.A. employee who held a GS–12 position, John Moriarty, died in April of 1974. Even if these allegations

were not raised to the Appeals Council, its decision to the contrary was not supported by the evidence before it. The record allowed for little more than an uninformed guess as to whether a GS–12 vacancy occurred after plaintiff had served more than four years in the Army.

■ The Appeals Council's assumption about the date the vacancy arose is inappropriate in a more fundamental way. By basing its critical assumption solely on the date of plaintiff's inquiry, the Council impermissibly imposed on Cobb the burden of discovering whether a vacancy existed. The Act charges the V.A. with an affirmative obligation to consider for promotion those employees who had been absent from duty because of military service. Even if Cobb had never inquired about the opening in question here, the VA would, nonetheless, have had the affirmative obligation to consider her for promotion to an existing vacancy.

In view of the limited and inadequate factual record before the Appeals Council on this issue, this court finds its *sua sponte* determination to be unsupported by any substantial evidence and contrary to law.

### B. The Boston Field Office's Findings

The statutory scheme under which Cobb seeks relief is intended to redress inequities that may have arisen due to the veteran's absence while in service to the country. The record demonstrates that she is an intended beneficiary of the Act's provisions.

During the first four years of Cobb's military service, at least one, and quite conceivably, two GS–12 positions may have become available at the V.A. Despite the V.A.'s statutory obligation to consider Cobb for these positions, there is no indication that she was ever considered, nor was she notified that they existed. Instead, on her own initiative, Cobb wrote to the V.A. inquiring about an opening left by the death of her supervisor. In its curt response, the V.A. stated that the position had been filled long before.

Immediately upon her reinstatement to the V.A., plaintiff should have been notified of her restoration rights, including her right to appeal an improper restoration decision. The V.A. is required to give such notice regardless of whether a returning employee has complained about a restoration decision. 5 C.F.R. § 353.307 (1976).

No such notice was given to Cobb even though she had expressed dissatisfaction about her position on a number of occasions to the V.A.'s Chief Personnel Officer, Thomas J. Hogan. Despite Cobb's repeated protestations, Hogan failed to inform Cobb of her right to appeal. Further, Cobb sought help from the U.S. Office of Personnel Management (OPM). Helen Arnold, a Personnel Staffing Specialist at OPM writing to Cobb on November 23, 1979 acknowledged as much. She wrote, "[K]nowing that you did make inquiry of a variety of people in this organization shortly after your restoration, I suggest that you contact the Merit System Protection Board...." MSPB record, 2/2/82 p. 14.

■ The requirement of due diligence in the absence of proper notification under 5 C.F.R. § 772.302 must be understood as part and parcel of the entire statutory scheme. Veterans are not required to take extraordinary measures to enjoy the rights to which they are entitled under the Act. They cannot be expected to find their way through the labyrinth of administrative agencies and regulations, particularly when they are deterred from the outset by a pronouncement that their efforts will be unavailing. A veteran must be diligent in making his dissatisfaction known to his employers. But, it remains the obligation of the employers to inform returning veterans of their right to appeal a restoration decision.

■ The Boston Field Office of the MSPB held plaintiff to an inappropriate standard of due diligence. The hearing officer suggested that Cobb should have contacted the U.S. Attorney's Office, the Civil Service Commission, the V.A.'s Regional Office in Boston, or consulted a private attorney in pursuing her right of appeal. Yet, on the basis of her inquiries within the V.A., Cobb had no reason to believe that further pursuit of her complaint would be worthwhile in any way. A more reasonable standard of diligence, then, would look to a veteran's effort to make clear to her employer that her restoration is unsatisfactory. Here, through her repeated protestations, Cobb made it abundantly clear to the Personnel Officer at the V.A. that she considered her restoration to be unfair. In view of Cobb's perseverance and persistence, she can be said to have satisfied the "due diligence" requirement of 5 C.F.R. § 772.302 (1976). Her behavior warranted extending the 15 day limitation on her right to appeal her restoration.

■ Finally, the Field Office's conclusion that Cobb's appeal is barred by laches is unsupported in view of this court's interpretation of the due diligence requirement of 5 C.F.R. § 772.302 (1976). The equitable doctrine of laches may be applied where a plaintiff is responsible for unreasonable and inexcusable delay resulting in prejudice to the defendant. *Gardner v. Panama Railroad Co.,* 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31 (1951); *Holmberg v. Ambrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946); *Goodman v. McDonnell Douglas Corp.,* 606 F.2d 800 (8th Cir.1979). Unlike the operation of a statute of limitations, a finding of laches depends on careful attention to the particular facts and historical nuances of each case. "Equity eschews mechanical rules; it depends on flexibility." *Holmberg v. Ambrecht, supra,* 327 U.S. 392 at 398, 66 S.Ct. 582 at 585, 90 L.Ed. 743.[3] This court has

---

**3.** Thus, defendant's reliance on *Goodman v. McDonnell Douglas Corp.,* 456 F.Supp. 874 (E.D.Mo.1978), affirmed, 606 F.2d 800 (8th Cir. 1979), *cert. denied,* 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980) is inapposite. In that case, the Eighth Circuit, while affirming the district court's findings of laches, sharply limited the precedential value of the ruling. "The situation here presents a special and extraordinary circumstance which must be woven into the web of factors involved in the determination of whether equitable considerations favor barring the suit on the basis of laches." *Id.* at p. 809. That case indicates that

carefully reviewed the facts of this case and finds that Cobb's delay in bringing her appeal was excusable.

Moreover, the government has made little or no showing of prejudice resulting from the lapse of time. The government contends that relevant employment and promotional records are no longer available. If so, the V.A. has ignored a particularly important regulation promulgated pursuant to the Act. Under 5 C.F.R. § 353.107 (1976), entitled, "Maintenance of Records,"

> Each Agency shall identify the position vacated by an employee who is injured or leaves to enter on military duty. It shall also maintain the necessary records to assure that all such employees are preserved the rights and benefits granted by law and this part.

The V.A.'s failure to maintain these records contravenes this regulation and cannot serve as a basis of its claim of prejudice.

For the reasons stated above, the court grants Cobb's motion for summary judgment with regard to her claim of improper restoration as a GS-11 social worker. Defendants' motion for summary judgment is denied. The matter is remanded to the Merit Systems Protection Board for further findings on the merits. An order will issue.

C. Sick Leave

In plaintiff's original appeal to the MSPB of December 5, 1979, she claimed 600 hours of accrued but uncredited sick leave. On January 4, 1980, in response to inquiries made by the MSPB, Gregory J. Haag, Jr., Acting Medical Center Director at the V.A., informed the MSPB that Cobb was only entitled to 146 hours of sick leave credit. He wrote, "Appellant's Record of Leave Data, Standard Form 1150, dated February 5, 1971, indicates that she was eligible to have only one hundred forty-six hours of sick leave recredited to her account in ac-

cordance with FPM 630 subchapter 5–4...." [4] On January 27, 1980, counsel for plaintiff responded to the Agency's letter of January 4, 1980. In that response, plaintiff's counsel acknowledged that plaintiff may have erred as to the precise number of hours, but requested that at least the 146 hours of sick leave owed to plaintiff be credited. In all subsequent filings, plaintiff has requested 146 hours of sick leave credit. There is no genuine issue of material fact in dispute here. Plaintiff claims, and the V.A. acknowledges, that plaintiff is owed 146 hours of sick leave credit. This court, therefore, grants plaintiff's motion for summary judgment with regard to her claim of sick leave. The director of the V.A. is hereby ordered to credit plaintiff's sick leave account with the 146 hours owed to her.[5]

An order will issue.

district courts have wide latitude in balancing the equities in making the determination of laches.

**4.** MSPB administrative record of 2/2/82, p. 22.

**5.** Under 5 C.F.R. § 630.101 (1974) the, "head of an agency having employees subject to this part is responsible for the proper administration of this part so far as it pertains to employees under his jurisdiction, and for maintaining an account of leave for each employee...."