Catalina Garcia NUNEZ, Petitioner,

v.

Alberto R. GONZALES, Attorney General, Respondent.

No. 05–76361.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 19, 2007.

Filed May 9, 2007.

Peter R. Afrasiabi, Esq., Turner Green Afrasiabi & Arledge, LLP, Costa Mesa, CA, for Petitioner.

Catalina Garcia Nunez, La Puente, CA, pro se.

CAC–District Counsel, Esq., Office of the District Counsel, Department of Homeland Security, Dorothy A. Schouten, Esq., USLA–Office of the U.S. Attorney Civil & Tax Divisions, Frank D. Kortum, Esq., U.S. Attorneys Office, Asst U.S. Attorney, Los Angeles, CA, Ronald E. LeFevre, Chief Counsel, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, Nancy E. Friedman, Esq., DOJ–U.S. Department of Justice, Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: FARRIS and GOULD, Circuit Judges, and DUFFY *, Senior Judge.

MEMORANDUM **

Catalina Garcia Nunez petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming the immigration judge's ("IJ") denial of her motion to reopen her deportation proceedings.[1] We

---

* The Honorable Kevin Thomas Duffy, Senior United States District Judge for the Southern District of New York, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. Because the parties are familiar with the facts and procedural history, we do not re-

have jurisdiction pursuant to 8 U.S.C. §§ 1105a and 1252.

Nunez, a native and citizen of Mexico, entered the United States in 1989 and, along with her United States-born daughter, has lived here ever since. In 1996, Nunez retained a notario[2], Reyna Dorantes, who operated General Legal Services, to assist her in the "labor certification process." In October of 1996, Nunez received "proof" of her "legal permanent residency" and employment authorization from Dorantes in the form of a red stamp in her passport, which Nunez was told was from the INS. Dorantes further explained that Nunez would receive her permanent residency card in the mail within the next twelve to twenty-four months.

On September 24, 1996, an application for asylum and withholding of removal was filed in Nunez's name. Nunez's address on the application was listed as 3168 E. Gage Ave., Huntington Park, California 90255. In fact, this was the address of Dorantes's General Legal Services business. Nunez says that the notario never told her that she had filed asylum papers in her name. Indeed, Nunez believed that she had become a legal permanent resident of the United States and used the red stamp in her passport to obtain a social security card and a California driver license.

The INS processed Nunez's purported asylum application and on March 20, 1997, initiated deportation proceedings against Nunez. An order to show cause ("OSC") was served via certified mail at the Gage Avenue address and the return receipt was signed and returned to the Immigration Court. The OSC charged Nunez as being deportable pursuant to 8 U.S.C. § 1251(a)(1)(B), and stated that Nunez's hearing was scheduled for June 18, 1997, at 8:30 a.m. Nunez, unaware of the proceedings, failed to appear for the hearing and the IJ found "deportability established as charged" and ordered Nunez deported to Mexico in absentia.

In 1997, a year after Nunez received the red stamp in her passport, she called the notario to ask where her permanent residency card was. Dorantes told Nunez that she would make an inquiry to the INS, but not to worry because it could often take up to two years to receive the card. Nunez also asked the notario whether she should renew her temporary evidence of lawful permanent residency. The notario told Nunez that renewal was not necessary since she already had her social security card and driver license, particularly since Nunez did not plan on leaving the country within the next year and it would be costly to seek renewal. Based on Dorantes's assurances, Nunez took no further action.

In 1998, two years after she had first received her temporary permanent residency, Nunez again contacted the notario to inquire where her card was. However, this time, when she went to the notario's office on Gage Avenue, the office was closed and the notario had disappeared. Nunez began hearing rumors that the notario had defrauded other clients and had left the state. Nunez consulted several attorneys, who all concluded that she had been defrauded by the notario who took her $3500 and forged the red stamp in her passport.

Nunez claims that she did not learn of the asylum application, and thus, the full

state them here except as necessary to explain our disposition.

**2.** Notarios are also known as immigration consultants and we have said that some notarios "are notorious in Southern California for preying on the immigrant community." *Barroso v. Gonzales,* 429 F.3d 1195, 1196 (9th Cir.2005).

extent of the notario's fraud, until a "[r]elatively recent" date (most likely late 2004 or early 2005), when she consulted a new attorney about obtaining "new labor certification." When she showed this attorney her passport and told him about retaining the notario in 1996 to secure working papers, he filed a FOIA request seeking Nunez's immigration records. Upon receipt of the records, Nunez and her attorney discovered for the first time that the notario had completed and filed an asylum application in Nunez's name without her consent or knowledge.[3] Nunez says that she never knowingly signed the asylum application, and believes that if the signature on the application is hers, she was somehow tricked into signing the papers by the notario. Nunez filed complaints against the notario and General Legal Services with the County of Los Angeles Consumer Affairs, the California Department of Justice, Office of the Attorney General, the State of California and the Consumer Affairs Agency, and the Office of the District Attorney in Los Angeles.

In addition, on April 1, 2005, Nunez filed a motion to reopen with the immigration court shortly after learning that an asylum application had been filed and that an in absentia deportation order had subsequently been entered. The IJ denied her motion to reopen on May 20, 2005, as untimely. Specifically, with regard to Nunez's claim of exceptional circumstances warranting reopening and rescission, namely the notario's fraud and ineffective assistance of counsel, the IJ held that the statute of limitations should not be equitably tolled because Nunez had "failed to act with due diligence in discovering the notary's misconduct." The BIA issued a per curiam decision adopting and affirming the decision of the IJ on October 7, 2005. This timely appeal followed.[4]

On appeal, Nunez argues that her motion to reopen should have been granted and the in absentia order of removal rescinded. Nunez argues that her failure to appear at her hearing was because of exceptional circumstances, namely the fraud and ineffective assistance of counsel perpetrated by the notario. In addition she argues that the order should also be rescinded because she did not receive notice of the removal hearing, due to the notario's fraudulent actions. The government contends, however, that this court must affirm the BIA's dismissal of Nunez's motion to reopen as untimely, because she did not exercise due diligence and is therefore not entitled to equitable tolling of the statute of limitations.

Congress has provided for the rescission of orders of deportation entered in absen-

---

3. The asylum application was full of inaccurate information that Nunez had never provided, including: (1) the application stated Nunez had no children, though Nunez has a daughter; (2) the application stated that Nunez was seeking political asylum because of the great danger to her life in Mexico, which was false; (3) the application stated that only Nunez had completed the application without any assistance, though Nunez had no knowledge of the application; and most importantly, (4) the application listed Nunez's home address as the notario's Gage Avenue business address, ensuring that Nunez would never know the application had been filed or that there were court dates she needed to respect.

4. We review the BIA's denial of a motion to reopen for an abuse of discretion. *See Shaar v. INS*, 141 F.3d 953, 955 (9th Cir.1998); *see also INS v. Doherty*, 502 U.S. 314, 323, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992). The BIA's decision denying a motion to reopen constitutes an abuse of discretion when it is rendered "arbitrarily, irrationally, or contrary to law." *Eide–Kahayon v. INS*, 86 F.3d 147, 149 (9th Cir.1996). Questions of law are reviewed de novo. *See Lopez v. INS*, 184 F.3d 1097, 1100 (9th Cir.1999) (reviewing de novo dismissal of motion to reopen on statute of limitations grounds); *Shaar*, 141 F.3d at 955.

tia under certain circumstances by the filing of a motion to reopen within 180 days after the date of the order of deportation. *See* 8 C.F.R. § 1003.23(b)(4)(iii). Nunez's motion to reopen was filed on April 1, 2005, more than seven years after the IJ entered an in absentia deportation order against her. We do, however, allow for equitable tolling of time limits on motions to reopen since we

> long ago adopted as [our] own the old chancery rule that where a plaintiff has been injured by fraud and "remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts ... to conceal it from the knowledge of the other party."

*Lopez,* 184 F.3d at 1100 (quoting *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946)). "This equitable doctrine is read into every federal statute of limitation." *Holmberg,* 327 U.S. at 397, 66 S.Ct. 582; *Fed. Election Comm'n v. Williams,* 104 F.3d 237, 240 (9th Cir.1996). In particular, we have held that the statute of limitations governing a motion to reopen should be equitably tolled "where the alien's late petition is the result of the deceptive actions by a notary posing as an attorney." *Lopez,* 184 F.3d at 1100; *see also Varela v. INS,* 204 F.3d 1237, 1240 (9th Cir.2000) (tolling limitations period where petitioner was defrauded by a non-attorney paralegal purporting to provide legal representation); *Fajardo v. INS,* 300 F.3d 1018, 1022 (9th Cir.2002) (tolling limitations period for more than four years where petitioner was defrauded by two non-attorneys purporting to provide legal representation).

In *Fajardo,* we explained that "the limitation period on motions to reopen based on exceptional circumstances must be tolled until [petitioner] *was aware of the harm resulting from* [the non-attorney's] misconduct." 300 F.3d at 1022 (emphasis added). Like the petitioner in *Fajardo,* Nunez claims that she only became aware of the extent of Dorantes's misrepresentations and the harm resulting from Dorantes's misconduct when she retained new counsel in late 2004 or early 2005 and became aware of the asylum application and deportation order through their FOIA request. *See id.* at 1021–22. Thus, "[t]he limitation period on motions to reopen based on exceptional circumstances must be tolled until [early 2005 when Nunez became] aware of the harm resulting from [Dorantes's] misconduct." *Id.* at 1022.

Accordingly, we grant the petition for review and reverse the BIA's dismissal of Nunez's motion to reopen as untimely, since the statute of limitations should have been equitably tolled. We remand to the BIA to grant Nunez's motion to reopen so that it may permit an IJ to hold an evidentiary hearing concerning whether exceptional circumstances exist such that Nunez's in absentia deportation order should rescinded. The IJ, after determining the facts, should apply the principles that we have adopted in *Lopez, Varela,* and *Fajardo,* and the BIA can also then decide based on a factual record and recourse to these precedents.

**PETITION FOR REVIEW GRANTED. REVERSED AND REMANDED WITH INSTRUCTIONS.**