**COMMON CAUSE, Plaintiff,**

v.

**FEDERAL ELECTION COMMISSION, Defendant.**

Civ. A. No. 85–968.

United States District Court, District of Columbia.

Oct. 23, 1985.

William T. Lake and Carol F. Lee, Washington, D.C., for plaintiff.

Robert W. Bonham, Federal Election Com'n, Washington, D.C., for defendant.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

*Introduction*

This case presents a novel question of statutory interpretation of the Federal Election Campaign Act of 1971, 2 U.S.C. § 431, *et seq.* (1982). Plaintiff seeks to challenge a decision by the Federal Election Commission ("Commission") dismissing its administrative complaint. Under the statute, any party "aggrieved by an order of the Commission dismissing a complaint filed by such party" may file a petition for judicial review "within 60 days after the date of the dismissal." 2 U.S.C. § 437g(a)(8)(A)-(B). Plaintiff filed its petition for review more than sixty days after the Commission, meeting in closed session, voted to dismiss the initial complaint. However, it filed its petition within sixty days of notification of this decision. Construing "date of the dismissal" as date of the decision, the Commission now moves to dismiss for lack of subject matter jurisdiction. This motion thus centers on the definition of "date of the dismissal." . For reasons set out below, we hold that the sixty-day review period commences on the date the complainant actually receives notice of the decision to dismiss.

*Statutory Framework*

The Federal Election Campaign Act of 1971, 2 U.S.C. § 431, *et seq.* (1982), and the Presidential Election Act of 1971, 26 U.S.C.

§ 9001, *et seq.* (1982), establish rules for the financing of federal election campaigns. Any person who believes a violation of either statute has occurred may file a complaint with the Federal Election Commission. 2 U.S.C. § 437g(a)(1). If four of the Commission's six members vote that there is "reason to believe" that the violation took place, the Commission must investigate the complaint. § 437g(a)(2). If four members then agree by vote that there is "probable cause to believe" the violation occurred, the Commission must attempt to reach a conciliation agreement with the person charged. § 437g(a)(4)(A)(i). If the Commission fails to reach such an agreement, it may file a civil action against the respondent. § 437g(a)(6)(A). If, however, .the Commission dismisses the complaint, "any person aggrieved" by the order of dismissal may file a petition for review in the United States District Court for the District of Columbia. § 437g(a)(8)(A). The party must file that petition "within 60 days after the date of the dismissal." § 437g(a)(8)(B).

*Factual Background*

Common Cause, a well-known public interest organization, filed an administrative complaint with the Commission on September 20, 1984. The complaint charged that Reagan-Bush '84, President Reagan's authorized campaign committee, violated the federal election laws when it failed to report and to pay for expenses incurred on a campaign-related trip to Illinois to address the convention of the Veterans of Foreign Wars. On January 15, 1985, the Commission voted four to two to dismiss Common Cause's complaint on the ground that there was no "reason to believe" any violation had occurred. This meeting took place behind closed doors. The Commission notified Common Cause of the decision by a letter dated January 24, 1985. On March 22, 1985, sixty-six days after the decision to dismiss and fifty-five days after the notification letter, Common Cause filed in this Court a petition seeking a declaration that the Commission acted contrary to law when it dismissed the complaint.

*Discussion*

The issue this motion presents is not whether to extend the period for filing petitions in federal court but how to define when that period begins. Congress has set a sixty-day period within which a party aggrieved by the Commission's dismissal of his or her administrative complaint may seek judicial review. There is no question of Congress' power to restrict the opportunity thus to challenge agency action. *Saffron v. Department of the Navy,* 561 F.2d 938, 941 (D.C.Cir.1977), *cert. denied,* 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780 (1978). And once Congress fixes such a time period for review, the court may not extend it, for the limitation is " 'jurisdictional and unalterable.' " *Cities of Batavia, Naperville, etc. v. FERC,* 672 F.2d 64, 73 (D.C.Cir.1982) (*quoting Microwave Communications, Inc. v. FCC,* 515 F.2d 385, 389 (D.C.Cir.1974)); *accord* Fed.R. App.P. 26(b). As the Supreme Court held in *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), "[i]f Congress explicitly puts a limit upon the time for enforcing a right which is created, there is an end of the matter. The Congressional statute of limitation is definitive." *Id.,* at 395, 66 S.Ct. at 584; *Saffron,* 561 F.2d at 941 n. 17. Thus, if the plaintiff has sought review beyond the sixty-day period Congress prescribed, this Court must grant defendant's motion and dismiss for lack of jurisdiction. *See Commonwealth of Pennsylvania v. ICC,* 590 F.2d 1187, 1193 (D.C.Cir.1978).

Conceding the applicability of the sixty-day limit, however, does not resolve this motion. The availability of review depends not just on the *length* of the review period but on when the period *starts.* The statute measures the period for filing a petition from "the date of the dismissal." 2 U.S.C. § 437g(a)(8)(B). It is therefore necessary to determine when the Commission actually "dismisses" a complaint—when at least four of its six members vote to dismiss or, as Common Cause argues, when the Commission notifies the complainant of the decision.

The text of the statute does not clarify the choice between these two alternatives. The statute nowhere defines "date of the dismissal." Nor can the term itself claim a self-evident meaning. When construing a statutory term, a court generally must consider common usage, unless the statute otherwise dictates. *See Inner City Broadcasting Corp. v. Sanders*, 733 F.2d 154, 158 (D.C.Cir.1984). In ordinary judicial actions, "dismissal" formally occurs when judgment is entered. Fed.R.Civ.P. 58. Notice to the parties does not delay the effective date. But this dismissal procedure is public. It does not pinpoint "dismissal" in administrative actions where, as here, the agency acts in closed session. *See* 2 U.S.C. § 437g(a)(12)(A).

The legislative history provides no insight into the meaning of the term "dismissal." The various Committee reports recite the sixty-day requirement but, like the statute itself, only mention "dismissal." They do not stop to explain the word. *See, e.g.*, S.Rep. No. 677, 94th Cong. 2d Sess. (1976) 8, *reprinted in* 1976 U.S.Code Cong. & Ad.News 929, 936.

The case law similarly does not help to define "dismissal." The few, unreported cases that have applied this particular statutory limitation period did not directly analyze whether the date of decision or the date of notification triggers the sixty days. *See McDonald v. FEC*, Civil Action No. 84–2710 (D.D.C. Oct. 5, 1984); *Williams v. FEC*, 673 F.2d 553 (D.C.Cir.1982). The parties' analogies to cases in other administrative contexts also fail to resolve our dilemma. To begin with, these cases can only illustrate; they are not dispositive. *See Chem-Haulers, Inc. v. United States*, 536 F.2d 610, 616 (5th Cir.1976). Furthermore, the unique facts of these cases prevent broad translation of their holdings. For example, in *National Black Media Coalition v. FCC*, 760 F.2d 1297 (D.C.Cir.1985), the D.C. Circuit refused to trigger the running of the review period until notice to the parties. However, the statute in question there expressly focused on "public" notice, not on an ambiguous event such as "dismissal." Similarly, *Chem-Haulers*, 536

F.2d 610, where the Fifth Circuit started the sixty-day clock at the date of notice, alone does not compel a parallel finding here. Unlike the present case, where there is no doubt when the formal decision was made, in *Chem-Haulers* the Interstate Commerce Commission decided to grant the disputed certificate several days before it signed and sealed the order. The fact that notification coincided with this formal entry of the decision freed the court from having to choose between the date of the official order and the date of notice.

■ The ambiguity of the phrase "date of the dismissal," Congress' failure to indicate its meaning, and the lack of analogous precedent leave no clear guideline as to how to define the term. The Commission's interpretation deserves no special deference. Ordinarily a court should accept an agency's construction of the statute it is authorized to implement. *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969); *Chem-Haulers*, 536 F.2d at 615. Furthermore, the Commission's interpretation of the federal election laws presumptively commands deference. *See FEC v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 37, 102 S.Ct. 38, 44–45, 70 L.Ed.2d 23 (1981). However, in this case, the Commission is construing not a substantive provision justifying reliance on its peculiar expertise but a procedural one. By setting the boundaries for judicial review, the Commission steps beyond the substance of federal election law to intrude on the courts' role to ensure fair procedure. *See Weyerhaeuser Co. v. Costle*, 590 F.2d 1011, 1027 (D.C.Cir.1978) (courts historically "the exponents of procedural fairness"). Although some courts accept an agency's interpretation of a statutory limitations period, *see, e.g.*, *Chem-Haulers*, 536 F.2d 610, other reject it. *See, e.g., Medical Committee for Human Rights v. SEC*, 432 F.2d 659 (D.C.Cir.1970), *vacated as moot*, 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972). The Commission's construction thus should not restrain an independent

evaluation of when a complaint is "dismissed."

Our task then is to construe the term in a way that promotes the general purposes of the Act. *See Zeigler Coal Co. v. Kleppe,* 536 F.2d 398, 408–09 (D.C.Cir.1976) (ambiguous provisions should be construed with reference to the statute's manifest purpose). Although the federal election laws have seen several incarnations, we will focus on the Federal Election Campaign Act of 1976, Pub.L. No. 94–283, 90 Stat. 478, which reconstituted the Commission as an independent agency and included the sixty-day review provision. The general purpose of the bill was to ensure that elections are "conducted under fair, uniform, and enforceable rules." H.Rep. No. 917, 94th Cong., 2d Sess. 2 (1976). Congress intended that the specific procedural provisions for the handling of administrative complaints would create "a delicate balance designed to effectively prevent and redress violations." *Id.* at 4; 120 Cong. Rec. 35,134 (1974) (remarks of Rep. Hays). With specific reference to the sixty-day review provision, this "delicate balance" incorporates two competing goals—shielding Commission decisions from belated attack and encouraging judicial review. *Cf. Medical Committee,* 432 F.2d at 664–65 (sixty-day statutory review period evidences attempt "to strike a balance between the need to have [Security and Exchange] Commission orders operate with finality, and the aggrieved party's need to have both adequate notice of the substance of the decision and sufficient time to prepare his petition"). This balance of remedies tilts toward construing "date of the dismissal" as the date of notice.

The fact that Congress chose to define the period for seeking review indicates a desire to restrict judicial challenges to agency action. Traditionally, statutes of limitation are " 'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.' " *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 554, 94 S.Ct.

756, 766, 38 L.Ed.2d 713 (1974) (*quoting Order of Railroad Telegraphers v. Railway Express Agency,* 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944)). In the context of administrative law, time limits for review allow private parties to rely on the agency order and proceed with their business. *See National Black Media,* 760 F.2d at 1300.

None of these rationales require setting the "date of the dismissal" at the time of decision, as the Commission urges. If we read "dismissal" as the date of notification, the danger of lost evidence would hardly be greater than if the sixty days began with the Commission's private decision. Furthermore, unlike the grant of a license or other tangible benefit, a decision to withhold prosecution does not redirect the activities of the person charged. There is no problem here of upsetting reliance on an agency decision.

█ Even characterizing the limitations period as a waiver of sovereign immunity does not mandate upholding the Commission's interpretation. The United States is generally immune from suit "save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980) (*quoting United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969)). In allowing aggrieved parties to sue the Commission, Congress waived sovereign immunity. But Congress waived it only for a finite period. When construing a statute of limitations that is a condition of the waiver of sovereign immunity, a court should neither extend nor narrow the waiver that Congress intended. *United States v. Kubrick,* 444 U.S. 111, 117–18, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979). But if in doubt, the stricter construction should prevail. *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983). The D.C. Circuit recently endorsed this policy when it held in *Nichols v. Pierce,* 740 F.2d

1249 (D.C.Cir.1984), that "[t]he policies inherent in the rule requiring strict construction of waivers of sovereign immunity strongly suggest that any doubts about the scope of a waiver be resolved in favor of the narrower governmental liability." *Id.* at 1257. In this case, the most restrictive construction of "dismissal"—the date of the decision—would ensure the "narrower governmental liability."

However, we hold that the policy behind the rule of strict construction should not apply in this case. The desire to preserve sovereign immunity reflects a desire to protect the public treasury. Unlike cases where liberal construction of the immunity waiver leads to monetary damage judgments against the United States, *see, e.g., Kubrick,* 444 U.S. 111, 100 S.Ct. 352 (Federal Tort Claims Act); *Nichols,* 740 F.2d 1249 (claim for attorney's fees), the present action involves only a request for injunctive relief. Choosing a more liberal interpretation here would not increase government liabilities.

On the other side of the balance, strict interpretation of "dismissal" could effectively negate judicial review. In providing for review, Congress entrusted to the courts the responsibility "to insure the integrity of the decision-making process." *Williams v. Robinson,* 432 F.2d 637, 642 (D.C.Cir.1970). To the extent the Commission's strict construction shortens the time available to prepare a petition, it devalues the right of review that Congress granted. The Commission here delayed eleven days from the time it voted to dismiss until the time it notified Common Cause. Neither the statute nor the regulations bar this practice. If we accept the Commission's interpretation, this lag necessarily reduces the sixty-day period. As the Fifth Circuit reasoned in *Chem-Haulers,* 536 F.2d 610, "it would be incongruous to rule that the speed with which the [Interstate Commerce] Commission issues an order following the session date at which it decides a matter is determinable of the variable length of time in which an aggrieved party may seek judicial review." *Id.* at 616. Allowing the Commission here to fix the re-view period would be equally "incongruous."

Moreover, the statute does not require the Commission to notify the complainant within sixty days of its decision. Taken to the extreme, therefore, the Commission's position could lead to notification of a dismissal after sixty days have elapsed and thus completely foreclose all opportunity for judicial review. This anomalous result would certainly be contrary to the intent of Congress. *Cf. Chem-Haulers,* 536 F.2d at 616 (rejecting the ICC's potential power "to insulate its orders from judicial scrutiny by delaying service of the order until sixty days after its decision date").

A further problem with accepting the date of decision as the baseline for review is that the complainant may not learn that date. In the present case, the Commission's letter to Common Cause merely stated that the Commission had closed the file and that Common Cause had the right to seek review. It failed not only to describe the Commission's action as a "dismissal" but also to mention when the vote occurred. A complainant receiving such a letter could only guess as to when his or her review period began—or would run out.

The Commission's argument that Common Cause *could* have filed within sixty days of the decision does not sway our view of the statute. Common Cause still had almost fifty days after notification within which to file its petition. But the fact that this plaintiff enjoyed a substantial, if abbreviated, period after notice to seek review does not guarantee that all plaintiffs will be as fortunate. In defining the statutory term "date of the dismissal," we must anticipate future complainants, whose notification letters could conceivably issue more than sixty days after the Commission's secret vote.

█ We hold, therefore, that "date of dismissal" is the date of notification. This finding, however, leaves open one further question: when does the Commission notify? Although both Common Cause and the

Commission focus on the date of the letter, notification could occur not only when the letter is dated, but also when it is mailed or received.

It is possible for a letter to be dated and then not mailed for an indeterminate period of time. To avoid the harshness of this possibility and to accommodate the fact that mails are frequently late, we further hold that the sixty-day review period begins when the complainant actually receives notice of the dismissal. Until the claimant is aware of the action, notice cannot accomplish its purpose of advising the plaintiff that the review period has started to run. *See Franks v. Bowman Transportation Co.,* 495 F.2d 398, 404 (5th Cir.1974), *rev'd on other grounds,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). This interpretation follows analogous cases where courts have construed statutory notice as requiring receipt. *See, e.g., Lewis v. Conners Steel Co.,* 673 F.2d 1240, 1243 (11th Cir.1982) (interpretating Title VII provision for review "within ninety days after the giving of such notice"); *Hospital San Jorge v. Secretary of Health, Education and Welfare,* 616 F.2d 580, 585 n. 6 (1st Cir.1980) (interpretating Social Security Act).

Applying these conclusions to the facts before us, we find that Common Cause filed its petition within the statutory period for review. Accordingly, defendant's motion to dismiss is denied.

An order consistent with the foregoing has been entered this day.