SGW, INC., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 29–89C.

United States Claims Court.

April 19, 1990.

## ORDER

MOODY R. TIDWELL, III, Judge:

This action is before the court on defendant's motion to dismiss plaintiff's claims not certified nor presented to the contracting officer for final decision. Plaintiff opposed defendant's motion and also moved for dismissal of defendant's counterclaims and special plea in fraud.

## FACTS

On February 10, 1981, plaintiff SGW Corporation (SGW) contracted with defendant, through the United States Army, to furnish 1,759 rifle barrels at a total cost of $243,621.50. The barrels were to meet strict government specifications and technical requirements. During performance, plaintiff requested and defendant subsequently approved a contract modification which allowed plaintiff to substitute an equivalent grade of steel so long as it satisfied certain physical tests. By May 17, 1983, plaintiff had produced and delivered 966 rifle barrels and had requested and received payments totalling $168,396.42.

On September 29, 1983, a rifle barrel manufactured by plaintiff malfunctioned. An investigation by the Department of the Army concluded that the malfunction was caused by the rifle barrel not having been manufactured pursuant to contract specifications. The Army then tested a representative sample of all the rifle barrels supplied by plaintiff and found the representative sample defective. As a result, defendant removed the remaining barrels from active service and instigated a more detailed investigation of plaintiff. That investigation led to the indictment of Mr. Robert C. Schuetz, part-owner, corporate secretary and plant manager of plaintiff, on eight counts of mail fraud arising out of the alleged knowing delivery of nonspecifi-

cation rifle barrels to the Army. Mr. Schuetz was later acquitted on six of the eight counts and the remaining two counts were dismissed.

Defendant terminated the contract for default in 1985 for plaintiff's failure to meet the delivery schedule and, on March 7, 1986, suspended plaintiff and its officers from contracting with the United States. On January 22, 1988, some three years after the termination for default, defendant demanded repayment of unliquidated progress payments from plaintiff in the amount of $34,743.92. Plaintiff then brought suit in this court.

Plaintiff claimed that the contract tolerance of .001 inch for the radius of the rifle barrel was commercially impracticable and impossible to perform in a normal manufacturing environment. Similarly, it was commercially impracticable and impossible to inspect the barrels to see if they met this minuscule degree of contract tolerance. These factors, plaintiff concluded, entitled plaintiff to compensation of the costs incurred in attempting to perform as well as an equitable time extension. Plaintiff also claimed that the contract was wrongfully terminated for default because the termination was based, at least in part, on Mr. Schuetz' alleged criminal misconduct, notwithstanding that Mr. Schuetz was never convicted. Plaintiff also claimed that defendant breached its good faith duty to cooperate by withholding "superior knowledge" of a problem with the rifle barrels. Due to this lack of notification, plaintiff continued to perform under the contract and produced 500 finished but undelivered barrels and 293 barrels that were approximately seventy-five percent complete when defendant terminated the contract for default. Plaintiff alleged that it incurred uncompensated costs plus lost profit of $219,581. Plaintiff argued that the termination for default was improper on three grounds. First, when defendant furnished defective specifications to plaintiff; second, when defendant provided defective government property to be used during inspection; and third, when the contracting officer demanded supplementary tests in addition to and more exacting than the tests specified in the contract. Plaintiff argued that the costs it incurred in attempting to perform these alleged constructive changes were compensable and sought to have this court convert the termination for default into a termination for the convenience of the government, allow recovery of plaintiff's lost costs and profit, and bar defendant from demanding repayment of unliquidated progress payments by allowing a time extension to negate the termination for default.

Defendant responded with counterclaims of fraud. Under the False Claims Act (FCA), 31 U.S.C. §§ 3729–3733 (1982 & Supp. V 1987), defendant alleged that plaintiff knew that its rifle barrels did not conform to the specifications but nonetheless presented the non-conforming barrels to defendant for approval and payment. Specifically, defendant alleged that the rifle barrels did not conform to the contract specifications as to dimensions, heat treatment and surface finish. The barrels were therefore unfit for their intended use. Defendant sought FCA penalties of $10,000 for plaintiff's claims for payment, treble damages amounting to $137,115, and costs of this action. Defendant also counterclaimed under the fraud provisions of the Contract Disputes Act (CDA), 41 U.S.C. § 604 (1982) in that the barrels did not conform to the specifications. Under the CDA, plaintiff would be liable to defendant for $133,652.50, the unsupported amount of its claims, and for all costs attributable to reviewing those claims. Finally, defendant made a special plea in fraud. Defendant argued that because plaintiff practiced or attempted to practice a fraud against the government in the proof, statement, establishment or allowance of its claims under the contract, defendant was entitled to entry of judgment of forfeiture.

Plaintiff responded that defendant had failed to state a legal cause of action upon which relief could be granted, that defendant's counterclaims under the CDA and the Special Plea in Fraud were time-barred by applicable statutes of limitation, that the latest provisions of the FCA which trebled penalties could not be applied retroactively

to events that occurred in the years 1981 through 1983 and, finally, that defendant was collaterally estopped from attempting to prove liability under the FCA because the civil penalties of the FCA constituted a punishment and therefore represented a double jeopardy to plaintiff due to Mr. Schuetz' acquittal of criminal charges.

## DISCUSSION

In examining these cross motions to dismiss, the court will accept the facts as alleged by the non-moving party as true, i.e., when assessing defendant's motion to dismiss, the facts will be viewed in the light most favorable to plaintiff and when assessing plaintiff's motion to dismiss, the facts will be viewed in the light most favorable to defendant. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Pope v. United States,* 15 Cl.Ct. 218, 222 (1988).

■ The fundamental issues for the court are whether defendant properly terminated plaintiff's contract for default and demanded repayment of $34,743.92 in unliquidated progress payments. The parties concede that these issues are properly before this court and the court agrees that it has subject matter jurisdiction over these issues. *See* 41 U.S.C. § 605(a), (c)(1) (1982). While a default termination by itself does not raise a dispute within the meaning of the CDA, where, as here, that termination for default is accompanied by the government's claim for repayment of unliquidated progress payments, a dispute within the jurisdiction of this court does exist. *Malone v. United States,* 849 F.2d 1441, 1444 (Fed.Cir.1988); *see W.H. Moseley Co. v. United States,* 230 Ct.Cl. 405, 677 F.2d 850, 852, *cert. denied,* 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982); *Frawley v. United States,* 14 Cl.Ct. 766, 768 (1988); *Mega Constr. Co. v. United States,* 14 Cl.Ct. 555, 557 (1988); *Gunn–Williams v. United States,* 8 Cl.Ct. 531, 535 (1985).

### A. Plaintiff's Termination Claims.

■ Plaintiff argued that the finality of defendant's default allowed it to bring all possible claims under the contract in this action before this court. That argument, however, is not the law. *Malone,* 849 F.2d at 1444; *Frawley,* 14 Cl.Ct. at 768. This court has jurisdiction only over those claims of plaintiff which have been certified by the contractor and presented to the contracting officer for final determination. 41 U.S.C. § 605 (1982); *see Malone,* 849 F.2d at 1443–44; *see also Ball, Ball & Brosamer, Inc. v. United States,* 878 F.2d 1426, 1428 (Fed.Cir.1989); *Thoen v. United States,* 765 F.2d 1110, 1116 (Fed.Cir.1985); *Skelly & Loy v. United States,* 231 Ct.Cl. 370, 685 F.2d 414, 416 (1982); *W.H. Moseley Co.,* 677 F.2d at 852; *Frawley,* 14 Cl.Ct. at 768; *H.H.O. Co. v. United States,* 12 Cl.Ct. 147, 160–61 (1987). Though plaintiff's possible claims against defendant under a termination for the convenience of the government might entail similar or identical proof as that which plaintiff must produce in this action, these possible claims have neither been certified by plaintiff nor presented to the contracting officer for final determination. Plaintiff has therefore failed to meet the mandatory, jurisdictional prerequisites necessary to bring its claims in this court.

### B. Defendant's Counterclaims in Fraud.

#### 1. Defendant's FCA Counterclaims.

Plaintiff moved this court to dismiss defendant's counterclaim under the FCA on three grounds: 1) because it would violate the double jeopardy clause of the fifth amendment in that the FCA penalties amount to a punishment which has already been determined by plaintiff's prior criminal acquittal, 2) because defendant failed to allege intent to defraud, a necessary element of defendant's counterclaim under the pre–1986 FCA [1] or, in the alternative, 3) because the 1986 amendments to the FCA

---

**1.** Plaintiff had also asserted collateral estoppel to bar defendant from attempting to prove liability. Plaintiff has withdrawn this affirmative defense because it does not present a pure legal issue. This affirmative defense cannot, therefore, be resolved on this motion because it would require this court to make findings of fact.

which increased the double damages to treble damages, removed the requirement that defendant allege the intent to commit fraud, and statutorily defined the term "knowledge" cannot be applied retroactively to plaintiff.

      *a. Violation of Double Jeopardy.* Plaintiff's argument that defendant's civil counterclaim under the FCA violated the double jeopardy clause failed to recognize that Congress has the vested authority to impose criminal and civil sanctions for the same actions without implicating the double jeopardy clause. *E.g., Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938). Where, as here, Congress has imposed both criminal and civil sanctions, it is evident that Congress intended the criminal penalties as punishment and the civil sanctions to compensate the public fisc. *See United States ex rel. Marcus v. Hess,* 317 U.S. 537, 548–49, 63 S.Ct. 379, 386, 87 L.Ed. 443 (1943). It is only when a civil sanction bears no relation to the actual damages suffered, that the civil sanction would be deemed a punishment. *United States v. Halper,* —— U.S. ——, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487 (1989). In this light, plaintiff would have the court view defendant's recovery under FCA as wholly disproportionate to any damages actually suffered and therefore a punishment barred by the double jeopardy clause because of Mr. Schuetz' prior acquittal of criminal liability on like charges.

    Whether this contention would hold true or not in the present case is not a question this court need answer. Looking at the facts in the light most favorable to plaintiff, the damages allowable under the FCA do not constitute punishment for two specific reasons: 1) the relationship between defendant's alleged harm and defendant's recovery can not be measured precisely as there are potentially immense damages the government could suffer due to improperly manufactured rifle barrels that malfunction in use, *See Id.;* and 2) even if treble damages were to be imposed in this action, the civil penalty imposed would not be so severe as to be penal in nature because the court is "unable to say that the ... damages would 'do more than afford the government complete indemnity for the injuries done it.'" *Rex Trailer Co. v. United States,* 350 U.S. 148, 152, 76 S.Ct. 219, 222, 100 L.Ed. 149 (1956) (quoting *United States ex rel. Marcus v. Hess,* 317 U.S. at 549, 63 S.Ct. at 387). As plaintiff pointed out in its brief, this is not a matter of small concern: For a small company such as plaintiff's, the quantum of possible damages could indeed be severe. However, as presently constituted, the FCA damages are both less than plaintiff has already been paid under the contract and well less than half of the total contract amount. No reasonable argument can be made that this is so "sufficiently disproportionate that the sanction constitutes a ... punishment...." *See Halper,* 109 S.Ct. at 1904. Therefore, under the facts alleged and for the purposes of this motion only, the court does not find the potential damages penal in nature.

      *b. Failure to Allege Intent to Commit Fraud.* Holding as we have that defendant's FCA counterclaim is not barred by the double jeopardy clause, the court now addresses plaintiff's argument that defendant's counterclaim under the FCA must be dismissed because defendant failed to allege intent to commit fraud, a necessary element of the claim under the pre–1986 FCA. The court will not dismiss defendant's FCA counterclaim because this circuit has never required that the government plead intent to commit fraud in FCA actions as a necessary element of the claim.[2] *See, e.g., Miller v. United States,* 213 Ct.Cl. 59, 550 F.2d 17, 22 (1977). Because the Court of Claims would not have required defendant to allege intent to commit fraud as a necessary element of the claim even prior to the FCA 1986 amendments there is no need to require defendant to allege intent now.

      *c. Retroactive Application of the 1986 FCA Amendments.* Plaintiff's remaining argument, that the 1986 amend-

---

**2.** The intent to commit fraud must, however, be proven by clear and convincing evidence in defendant's special plea in fraud. *Miller v. United States,* 550 F.2d 17, 22 (1977).

ments to the FCA which raise the statutory damages to treble damages plus a maximum of $10,000 per claim cannot be applied retroactively to plaintiff under these circumstances, is based on the premise that to assess the 1986 damages on actions that took place in 1981 through 1983 would be improper. This narrow question appears to be an issue of first impression for this court. Neither has the Court of Appeals for the Federal Circuit nor the Supreme Court adjudicated the issue. It is clear to this court, however, that it must "apply the law in effect at the time it renders its decision...." *Bradley v. School Bd. of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). In *Bradley*, the Supreme Court instructed courts examining the retroactive application of laws to inquire whether there is statutory direction or legislative history addressing the retroactivity of the amendments and if not, to then determine whether retroactive application would result in "manifest injustice". *Id.* at 711, 94 S.Ct. at 2006. The court is unable to find, in its examination of the contradictory noncongressional reports upon which plaintiff relies and the post-enactment single sentence statement on which defendant relies, any true congressional intent on this issue. The court therefore, in light of *Bradley*, must determine whether retroactive application of the 1986 FCA amendments would result in "manifest injustice". *Id.* "Manifest injustice" is determined by examining "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." *Id.* at 717, 94 S.Ct. at 2019.

The first inquiry, the nature and identity of the parties, is of primary importance in the present circumstances because "in mere private cases between individuals, a court will ... struggle hard against a construction which will, by a retrospective operation, affect the rights of parties, but in great national concerns ... the court must decide according to existing laws...." *Id.* at 712, 94 S.Ct. at 2016 (quoting *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801)). The parties here are not two private parties but

the government and a public actor whose actions implicate public concerns. Preventing fraud against the government is a matter of great national concern whether that concern represents the prevention of monetary losses currently estimated to be at least in the hundreds of millions of dollars or more a year, or whether that concern is expressed in terms of maintaining public confidence in the government's ability to efficiently manage its own programs. *See* S.Rep. No. 345, 99th Cong., 2d Sess. 1–3, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5266, 5266–68. The first *Bradley* inquiry, therefore, is answered in favor of retrospective application.

The second *Bradley* inquiry, the nature of rights, focuses on the judiciary's concern that "injustice may arise from retrospective application of a change in law.... The Court has refused to apply an intervening change to a pending action where it has concluded that to do so would infringe upon or deprive a person of a right that had matured or become unconditional." *Bradley*, 416 U.S. at 720, 94 S.Ct. at 2020 (citations omitted). The 1986 FCA amendments modified the remedies available to the government. These provisions had not been amended since the Civil War and the 1986 amendments reflected Congress' recognition of the effects of inflation on the value of the dollar since then as well as the increased costs the government presently incurs in litigating fraudulent claims. *See* S.Rep. No. 345, 99th Cong., 2d Sess. 2, 6, 31, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5266, 5266–67, 5271, 5296. Because these changes in the FCA were merely curative or remedial in nature, they cannot be viewed as affecting the underlying liabilities or rights of plaintiff. *Accord Meller v. Heil Co.*, 745 F.2d 1297, 1304–05 (10th Cir.), *cert. denied*, 467 U.S. 1206, 104 S.Ct. 2390, 81 L.Ed.2d 347 (1984); *Silverlight v. Huggins*, 488 F.2d 107, 109–10 (3rd Cir.1973). In short, plaintiff has no vested right to be protected from or exposed to treble damages rather than double damages. *Accord O'Hare v. General Marine Transp. Corp.*, 740 F.2d 160, 170–71 (2nd Cir.1984), *cert. denied*, 469 U.S. 1212, 105

S.Ct. 1181, 84 L.Ed.2d 329 (1985); *see also United States v. Hill,* 676 F.Supp. 1158, 1169 (N.D.Fla.1987); *United States v. Oakwood Downriver Medical Center,* 687 F.Supp. 302, 307 (E.D.Mich.1988). The second *Bradley* inquiry also favors application of the 1986 FCA amendments to plaintiff.

The third *Bradley* inquiry examines the nature of the effects arising from the changed law by asking whether the changes impose new rights or obligations on plaintiff without giving plaintiff notice or opportunity to be heard. *Bradley,* 416 U.S. at 720, 94 S.Ct. at 2020. There are two modifications that need be examined in light of this inquiry. The first is the imposition of treble damages vice double damages. As discussed above, this modification in and of itself does not affect plaintiff unfairly because it merely corrects an outdated compensatory scheme and in no way affects plaintiff's rights or underlying substantive liabilities. A second 1986 FCA amendment which might be viewed as altering plaintiff's rights under the pre-existing statute is the specific definition of the degree of knowledge necessary to prevail under the statute. That change, however, does not alter plaintiff's rights under the present circumstances because as early as 1977 this circuit established and followed the precise definition of knowledge that the 1986 amendments ultimately adopted. *See Miller,* 550 F.2d at 23 (relying on *United States v. Cooperative Grain & Supply Co.,* 476 F.2d 47, 60 (8th Cir.1973)). The third *Bradley* test also clearly favors retrospective application of the 1986 FCA amendments in this case.

In conclusion, the court holds that no manifest injustice would result in applying the 1986 FCA amendments against plaintiff in this case; there is no statutory language nor demonstrable congressional intent barring this holding and the parties are public entities involved in weighty matters of public concern. Most importantly, plaintiff's rights and obligations have not been substantively effected, if at all, by the amendments. The court, therefore, will apply current law to this case.

### 2. Statutes of Limitation for Defendant's CDA Counterclaim and Defendant's Special Plea in Fraud.

Plaintiff moved this court to dismiss defendant's counterclaim under the CDA as well as defendant's special plea in fraud as each is barred by applicable statutes of limitation.

Plaintiff argued that the express language of the CDA itself bars defendant's recovery: "Liability under this subsection shall be determined within six years of the commission of such misrepresentation of fact or fraud." 41 U.S.C. § 604 (1982). Plaintiff argued that the commission of the fraudulent act to which the statute refers would be actions plaintiff allegedly committed between the years 1981 and 1983. Because defendant's counterclaim was not brought until 1989, plaintiff concluded, it was time-barred. Plaintiff cited no authority for its position and merely blanketly disputed the applicability of the United States Supreme Court's determination of a similar issue in *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946).

In *Holmberg,* the Supreme Court stated general principles which that Court has never reversed nor distinguished.

If want of due diligence by the plaintiff may make it unfair to pursue the defendant, fraudulent conduct on the part of the defendant may have prevented the plaintiff from being diligent and may make it unfair to bar appeal to equity because of mere lapse of time.

Equity will not lend itself to such fraud and historically has relieved from it. It bars a defendant from setting up such a fraudulent defense..... And so this Court long ago adopted as its own the old chancery rule that where a plaintiff has been injured by fraud and "remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party." *Bailey*

*v. Glover*, 21 Wall. 342, 348 [22 L.Ed. 636 (1874)]; and see *Exploration Co. v. United States*, 247 U.S. 435 [38 S.Ct. 571, 62 L.Ed. 1200 (1918)]; *Sherwood v. Sutton*, 5 Mason 143 [1828].

This equitable doctrine is read into every federal statute of limitation.

*Id.* at 396–97, 66 S.Ct. at 584–85. The Court of Claims followed this reasoning in *Jankowitz v. United States*, 209 Ct.Cl. 489, 533 F.2d 538 (1976), where it stated:

If a cause of action accrues to the Government in this case at the time of the alleged bribe and fraudulent reappraisal, [*i.e.* when the alleged fraudulent act occurred,] it would be quite possible that in future cases Government claims ... could become time-barred ... before the Government learned of the fraud.... It is inconceivable to us that Congress intended to allow a false claimant to insulate himself from all liability merely by forestalling the time of filing such a claim until 6 years after the alleged fraudulent acts which make the filing possible.

*Id.*, 533 F.2d at 546–47. This reasoning compels this court to conclude that the earliest defendant could have been aware of the alleged fraud was when the rifle barrel malfunctioned on September 29, 1983. Defendant's counterclaims were filed in this court on March 3, 1989 which is within the six year statute of limitation. Plaintiff's motion to dismiss this counterclaim under the CDA is denied.

■ Plaintiff also argued that 28 U.S.C. § 2462 bars defendant's special plea in fraud because a general five-year statute of limitation applies to special pleas in fraud which contain no stated statute of limitation. The Court of Claims has long held that "[t]he limitation of section 2462 applies only to actions instituted by the Government." *Erie Basin Metal Prods., Inc. v. United States*, 138 Ct.Cl. 67, 150 F.Supp. 561, 566 (1957). Defendant's counterclaim under 28 U.S.C. § 2462 is not an action "instituted by the Government." Therefore, following this Court of Claims precedent, the only statute of limitation applicable is the general six year statute of limitations. 28 U.S.C. § 2501 (1982). The

reasoning developed above which compelled this court to deny plaintiff's motion to dismiss defendant's CDA counterclaim as time-barred, also compels this court to deny plaintiff's motion to dismiss defendant's special plea in fraud on statute of limitation grounds.

### CONCLUSION

The parties concede that plaintiff is properly before this court to seek the conversion of the termination for default and demand for repayment of $34,743.92 in unliquidated progress payments to a termination for the convenience of the government. Defendant's motion to dismiss all of plaintiff's attendant termination for convenience claims is, however, granted without prejudice because plaintiff has not met the jurisdictional requirements of this court by certifying and presenting these claims to the contracting officer for a final decision.

Plaintiff's motion for dismissal of defendant's counterclaims is denied. Defendant has stated claims for which this court may grant relief. The court specifically holds that it will apply the existing law in this case, that the existing law does not affect plaintiff's rights or legal obligations, and that the imposition of treble damages rather than double damages is not punishment. Moreover, neither defendant's counterclaim under the CDA nor its special plea in fraud is barred by applicable statute of limitation.

IT IS SO ORDERED.