**UMC ELECTRONICS CO., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Nos. 93–709C, 94–450C.

United States Court of Federal Claims.

Dec. 10, 1999.

Michael J. Hogan, Goldberg & Connolly, Rockville Centre, NY, Alan M. Lestz, Witte, Lestz & Hogan, Bronxville, NY, Michael J. Hogan, Goldberg & Connolly, Rockville Centre, NY, for UMC Electronics.

Richmond I. McKay, U.S. Dept. of Justice, Civil Div., Judith Rabinowitz, U.S. Dept. of Justice, Fraud Section, Washington, DC, for U.S.

## ORDER AND JUDGMENT

HORN, Judge.

On June 23, 1999, the court issued an opinion on the merits of the above-captioned case after a lengthy trial. The opinion issued earlier by the court is incorporated into this order. In the opinion, the court held that the plaintiff/counter-defendant, UMC, had presented a fraudulent claim for equitable adjustment of a contract to the government on June 11, 1992. Pursuant to the Special Plea in Fraud statute, 28 U.S.C. § 2514 (1994), the court held that forfeiture of UMC's claim against the United States was warranted. In addition, under the False Claims Act, 31 U.S.C. § 3729 (1994), the court found that the government was entitled to recover civil penalties in the amount of $10,000.00. The court also held that, pursuant to the anti-fraud provision of the Contract Disputes Act, 41 U.S.C. § 604 (1994), UMC was liable to the government for the amount of the misrepresentation, $223,500.00, which UMC presented in its June 11, 1992 claim for equitable adjustment. Moreover, under § 604, the government is entitled to its costs of reviewing the fraudulent claim. Therefore, the court ordered the United States to submit an accounting of its costs of review. As with every aspect of this case, the accounting of costs phase of the case occasioned delays and disputes between the parties. After considering several submissions from both parties and after holding an oral argument on the issues raised, the court

ORDERS that the government is entitled to the sum of $853,408.00 representing the penalties imposed as a result of plaintiff's fraudulent actions, including the $223,500.00 value of plaintiff's fraudulent claim, the $10,000.00 civil penalty imposed by the court, and the costs of review.

The anti-fraud provision of the Contract Disputes Act reads as follows:

### § 604. Fraudulent claims

If a contractor is unable to support any part of his claim and it is determined that such inability is attributable to misrepresentation of fact or fraud on the part of the contractor, he shall be liable to the Government for an amount equal to such unsupported part of the claim in addition to all costs to the Government attributable to the cost of reviewing said part of his claim. Liability under this subsection shall be determined within six years of the commission of such misrepresentation of fact or fraud.

41 U.S.C. § 604. It is the clause of this provision concerning costs attributable to review of the claim which is chiefly in dispute here. The government's claimed costs of review can be divided into three categories: (1) costs of review at the contracting officer level, (2) costs of review by the Defense Contract Audit Agency (DCAA), and (3) costs of review by the Department of Justice (DOJ). With respect to alleged DCAA and DOJ costs of review, the parties have stipulated to the actual dollar values of costs incurred, but do not agree on whether the government is legally entitled to those costs. With respect to the contracting officer costs of review, the parties can agree on neither exact amounts nor legal entitlement.

■ Before contesting the specific costs claimed by defendant, plaintiff initially argues that defendant's claim for costs is untimely and barred based upon the last sentence of § 604. That sentence requires that, "Liability under this subsection shall be determined within six years of the commission of such misrepresentation of fact or fraud." 41 U.S.C. § 604. Despite extensive proceedings before the contracting officer, in the bankruptcy court, and in this court, the plain-

tiff, UMC, argues that an award of damages pursuant to the provisions of § 604 is barred because more than six years have passed since the contracting officer denied plaintiff's claim on November 19, 1992, and stated that he "believed UMC's claim to be fraudulent." According to the plaintiff, "[i]t therefore must be concluded that as of November 19, 1992, he [the contracting officer] knew of the grounds for the government's subsequent counterclaim," and, thus, the claim is barred by the six year statutory directive. The defendant disagrees.

Were the court to accept UMC's construction of § 604's time limitation, the government's ability to investigate and to litigate a fraud claim, especially if multiple fora are involved, would be severely impaired. This seems an unlikely congressional intent, especially because a contracting officer cannot find fraud, but must refer suspected cases of fraud to the Department of Justice for review pursuant to 41 U.S.C. § 605(a) (1994).

The six year time limitation included in § 604 directs that liability must be determined "within six years of the commission of such misrepresentation of fact or fraud." Given the broad statutory language and the dearth of available case precedent, we resort to the legislative history for assistance in defining the phrase "within six years of the commission of such misrepresentation of fact or fraud." In explaining the legislation, the Senate Report indicates that the section was added "to make it clear to all parties involved in government contract claims that strict penalties are in effect for those parties who are unable to support their of [sic] misrepresentation of fact or fraud. *Misrepresentation is interpreted to have been committed when intent to deceive or mislead is proven.*" S.Rep. No. 95–1118 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5235, 5242–43. (emphasis added).

In the instant cases, after lengthy pre-trial maneuverings and a similarly lengthy trial, this court determined that the plaintiff had committed fraud and that the "intent to deceive or mislead" was proven. Moreover, the contracting officer was without authority to determine fraud without referral to the Department of Justice. Surely, Congress did not intend to allow for the possibility that a plaintiff could engage in protracted pre-trial and trial procedures in order to escape liability when that plaintiff is found by a court to have committed fraud. Furthermore, in the instant case, this plaintiff's commission of fraud, although commencing with the claim submitted to the contracting officer, was repeated and ongoing in submissions presented by the plaintiff to a federal bankruptcy court, in multiple complaints filed in 1993 and 1995 in the United States Court of Federal Claims, during the testimony offered in this court by plaintiff's witnesses, including plaintiff's corporate officers, and in filings submitted to the court during trial and post-trial.[1] The court concludes, therefore, that defendant's claim for costs pursuant to § 604 of the CDA are not time-barred.

UMC also argues that "[d]efendant is barred from recovering the claimed costs as a matter of law because, under the law of this case and bankruptcy law, its claim is a pre-petition clam within the meaning of 11 U.S.C. § 101(5) that has not been the subject of a timely proof of claim filed against the Plaintiff in the bankruptcy court." The government appears to have filed a timely proof of claim on March 16, 1993, before the claim bar date of March 28, 1993. Several United States Courts of Appeals have held that leave to amend proofs of claims should be liberally given, and reviewed under the abuse of discretion standard, as long as the opposing party would not be unfairly prejudiced. *See, e.g., Gens v. Resolution Trust Corp.*, 112 F.3d 569, 575 (1st Cir.), *cert. denied sub*

---

1. One theory of how to calculate the six-year limitation is that the government's fraud claim must be *filed* within six years of when the government became aware of the fraud. *See, e.g., SGW, Inc. v. United States*, 20 Cl.Ct. 174, 181, 1990 WL 47673 (1990). Even utilizing this formulation, however, the government first could have become aware of UMC's fraud on June 11, 1992, when UMC submitted its fraudulent claim, and certainly was aware on November 19, 1992, when the contracting officer denied the claim and suggested that misrepresentation and cost inflation were involved in plaintiff's claim. The government's counterclaim, which was filed on October 26, 1995, was filed within six years of any date within that time frame.

*nom. Gens v. Federal Deposit Ins. Corp.,* 522 U.S. 931, 118 S.Ct. 335, 139 L.Ed.2d 260 (1997); *Roberts Farms Inc. v. Bultman,* 980 F.2d 1248, 1251 (9th Cir.1992). In *Tanaka Bros. Farms, Inc. v. Berger,* 36 F.3d 996 (10th Cir.1994), the court wrote, "In a bankruptcy proceeding, 'amendment of a proof of claim is freely permitted so long as the claim initially provided adequate notice of the existence, nature, and amount of the claim as well as the creditor's intent to hold the estate liable.' " *Id.* at 998 (quoting *Unioil v. Elledge,* 962 F.2d 988, 992 (10th Cir.1992)). Through its timely proof of claim, the defendant alerted UMC and other creditors to alleged entitlement for funds owed, including damages which would potentially be forthcoming from a fraud claim against UMC. The exact value of the government's claims in this case could not be determined precisely until the court's final judgment. The proof of claim may then be amended to reflect this amount, and no unfair prejudice will arise to UMC or other creditors who had notice. In addition, as defendant notes, a new proof of claim may be filed for a claim arising out of a judgment within thirty days after that judgment becomes final. *See* Fed. R. Bankr.3002(c)(3).

■ Returning to consideration of the actual dollars expended by the government and claimed as review costs, UMC argues that the DCAA and DOJ costs are "litigation" costs which are not recoverable as "review" costs under the CDA. UMC states that "the Government's review of UMC's claim could not have begun before June 11, 1992, the date the claim was submitted, and clearly ended no later than November 19, 1992, when the contracting officer issued a final decision denying that claim." Plaintiff further contends that:

> Based on a rational reading of 41 U.S.C. § 604, Defendant's costs of review must be confined strictly to the cost that it incurred to inspect and examine UMC's claim for increased material costs for the limited purpose of evaluating the merits of that portion of UMC's claim. Once the contracting officer determined that he would deny the claim, and would thereafter oppose it through litigation, he and the Gov-

ernment ceased "reviewing" the claim within the meaning of the statute.

The court cannot agree with UMC's position. The language of § 604 explicitly states that, having committed fraud in this case, UMC is liable for "all costs to the Government attributable to the cost of reviewing said part of [the] claim." There is no ambiguity in the phrase "all costs to the Government." Moreover, Congress did not articulate a limit on "the costs of reviewing the claim" to those incurred by the contracting officer. The court agrees with the defendant's statement, quoting § 605 of the Contract Disputes Act, that "since neither the agency nor the contracting office has authority to 'settle, compromise, pay, or otherwise adjust any claim involving fraud,' 41 U.S.C. § 605(a), the antifraud provision necessarily contemplates review by the Department of Justice." It is only logical that, without authority to address suspected fraudulent claims, a contracting officer must turn to the DOJ, and the DOJ may turn to the DCAA, for review of whether or not the fraud occurred. Thus, the court holds that the defendant's costs of review under § 604 can, if properly documented, include the costs of review by the contracting officer, the DCAA and the DOJ.

Therefore, the court now turns to an examination of the costs claimed by the defendant at the different levels of government review: (1) costs of review at the contracting officer level, (2) costs of review by the DCAA, and (3) costs of review by the DOJ.

### 1. Costs of review at the contracting officer level

The defendant argues that it is entitled to recover the following costs which were allegedly incurred at the contracting officer level in reviewing the fraudulent portion of plaintiff's June 11, 1992 claim:

| ELEMENT | AMOUNT |
|---|---|
| Direct Labor | $ 44,501.00 |
| Overhead (fringe benefits only) | $ 16,744.00 |
| SAIC Contract | $551,335.00 |
| **TOTAL** | $612,580.00 |

Plaintiff challenges the computation of these costs. Plaintiff believes that the direct labor costs are based on unreliable estimates, that the overhead/burden rate should be 12% (based on a number given in an OMB Circular,) and that the SAIC Contract "has no

nexus" to the fraudulent portion of UMC's claim litigated in the above-captioned cases.

The contracting officer, Jeffrey Knowlton, provided the estimates for the hours worked by the contracting office personnel on the review of UMC's claim in a signed declaration submitted to the court. His estimates were derived either from discussions which he personally held with employees, or from his personal knowledge of the amount of time which the employees spent on the project. The government then multiplied the hours worked by (1) hourly wage rates consistent with the various employees' grade levels, (2) a burden rate put forth in a published Air Force schedule of civilian pay rates for fiscal year 1995, and (3) 8.33%, which was the fraudulent material costs portion of UMC's total equitable adjustment claim. The defendant reasonably calculated the labor costs of review at the contracting officer's level. The contracting officer, due to his familiarity with the claim and those involved in its review, is in the best position to determine the hours expended on the project.

Furthermore, the government's calculation of the burden/overhead rate was appropriate. As defendant points out, OMB Circular No. A–76, which plaintiff reads to suggest a 12% overhead rate, is not a method of calculating historical costs and expressly states that it "should not be construed to create any right or benefit ... enforceable at law by a party against the United States." Even if it were relevant, the 12% figure is multiplied in the OMB Circular against a value that has already been augmented in consideration of employee benefits. Employee benefits are the sole consideration which defendant is now using for its overhead multiplier. Thus, a careful reading of OMB Circular No. A–76 appears to demonstrate that its use would give an overhead rate higher than that proposed by defendant, and defendant's proposed numbers in this category are reasonable and supported.

■ The government also claims the cost of the SAIC contract. According to the contracting officer, Jeffrey P. Knowlton, who reviewed UMC's claim, the purpose of the contract with Science Application International Corporation was the investigation of allegations that UMC substituted parts in the lights which UMC furnished under the contract with the government. Specifically, it was suspected that UMC had substituted less expensive parts in the production units than in those which had originally been tested as the first articles. The Statement of Work for the SAIC contract noted that the contract's scope included "all engineering activities required to identify the initial configuration of the floodlight set, deviations from the initial configuration in the production units and the impact of these production deviations in terms of cost of production, maintainability and reliability." If there was a cost savings for UMC from using substitute parts, plaintiff should not have been unilaterally allowed to benefit from that savings. Regulations incorporated within UMC's contract required that it submit an engineering change proposal to the contracting officer if there was any change from the originally approved configuration of the floodlights. The contracting officer also was obligated to make an equitable adjustment in the contract price in this situation. *See* 48 C.F.R. § 52.243–1 (1988).

The government, however, states in its post-hearing submission on the accounting of costs in the above-captioned cases that, at the fraud trial, "The government chose to keep its case simple and rely on a comparison of UMC's claimed costs versus its invoice costs." Indeed, the evidence presented at trial was focused on these issues and did not examine substituted parts. Section 604 of the CDA awards costs only for review of the "unsupported part of the claim." The SAIC contract was used to review allegations of fraud regarding substituted parts, which allegations, whether documented in the SAIC report or not, were not presented or proven at trial. Therefore, the SAIC contract costs are not cognizable under section 604 of the CDA and cannot be awarded to the defendant as part of the review costs following the court's finding of fraud in the above-captioned cases.

With respect to the costs of review at the contracting officer level, the court holds that the government is entitled only to claimed

**512**

review costs which include its direct labor and overhead costs, totaling $61,245.00.

### 2. Costs of review by the DCAA

The defendant argues that it is entitled to recover the following costs which were allegedly incurred by the DCAA in reviewing the fraudulent portion of plaintiff's June 11, 1992 claim:

| ELEMENT | AMOUNT |
| --- | --- |
| Auditor Time | $ 99,915.00 |
| Travel | $ 1,980.00 |
| **TOTAL** | **$101,895.00** |

The parties have stipulated that these are correct dollar figures for the claimed costs, but disagree as to whether the government is legally entitled to receive these costs. UMC's primary objection to the government's receipt of the costs is based upon plaintiff's contention that these are "litigation" costs, and, thus, not costs of review within the coverage of CDA § 604. As discussed earlier, the court disagrees and holds that such costs are within the scope of "all costs of review" under the statute.

The government has provided a summary of the total hours worked by individual DCAA personnel on the review of UMC's claim. Each individual for whose time the government seeks reimbursement worked exclusively on the fraudulent material costs portion of UMC's claim.[2] The individual DCAA employees' review times were taken directly from DCAA timekeeping records, and the travel expenses were properly documented with DCAA records. The court is satisfied that the DCAA costs have been properly established, and were reasonable costs of review. Moreover, the plaintiff has agreed that the costs were incurred. Therefore, with respect to the costs of review by the DCAA, the court holds that the government is entitled to the costs detailed above, totaling $101,895.00.

### 3. Costs of review by the DOJ

The defendant argues that it is entitled to recover the following costs which were in-

curred by the DOJ in reviewing the fraudulent portion of plaintiff's June 11, 1992 claim:

| ELEMENT | AMOUNT |
| --- | --- |
| Attorney Salaries | $162,842.00 |
| Attorney Benefits | $ 34,050.00 |
| Overhead | $221,615.00 |
| Travel | $ 4,904.00 |
| Copying | $ 33,357.00 |
| **TOTAL** | **$456,768.00** |

Just as with the costs of DCAA review, the parties have stipulated that these are correct dollar figures for the claimed DOJ costs, but the parties again disagree as to whether the government is legally entitled to receive these costs. UMC's primary objection to the government's receipt of the costs again is based upon plaintiff's contention that these are "litigation" costs, and not review costs. The court repeats its earlier conclusion that such DOJ-incurred costs are within the scope of CDA § 604.

The government has provided a detailed breakdown of the time which its attorneys spent working on the fraud aspect of these cases. The hours worked were established through DOJ records, and the hours were converted to a dollar cost figure by multiplying them by actual hourly salaries, and by benefit and overhead rates which were established by the DOJ in 1993.

Defendant also has demonstrated that its claimed DOJ labor costs are understated. The benefit and overhead rates were established in 1993, while the costs of review were not incurred until 1995–1999. In addition, the defendant's claimed cost of DOJ review does not include an allegedly large volume of work performed by other attorneys whose time could not be segregated to isolate time spent on the fraudulent material costs portion of UMC's claim. After examining defendant's proposed attorney costs of review at the DOJ level, the court is satisfied that they are reasonable and have been properly documented. Moreover, the plaintiff has agreed that the costs were incurred.

■ Last, the government's claim for the costs in the amount of $33,357.00 for using an outside copying service are recoverable by

---

**2.** The government originally sought reimbursement for the time of John Decesare, one of the auditors who reviewed UMC's claim. Subsequently, the government deducted Decesare's alleged time costs of $44,032.00 because an uncertain portion of his time included review of nonfraudulent aspects of plaintiff's equitable adjustment claim.

the defendant. Defendant alleges, and plaintiff does not contest, that UMC refused to allow the government access to its "invoices, shipping requests, and other documents critical to evaluate UMC's material costs claim." Thus, the court cannot accept UMC's contention that the copying was "indiscriminate" and "duplicative." Without open access to the records to determine their relevance firsthand, defendant's only option in response to the plaintiff's actions was to copy the entire set on plaintiff's terms using an outside copying service. UMC's action was another example in plaintiff's pattern of recalcitrance which has been evident throughout the history of this case, and defendant may properly recover the copying costs as a cost of review.

With respect to the costs of review by the DOJ, the court holds that the government is entitled to the costs detailed above, totaling $456,768.00.

### CONCLUSION

The court finds plaintiff liable in the sum of $853,408.00, representing the total of $10,000.00 for a civil penalty pursuant to the False Claims Act, $223,500.00 for the amount of the misrepresentation for which plaintiff is liable pursuant to the anti-fraud provisions of the Contract Disputes Act, and $619,908.00 for the costs of review by the contracting office, the DCAA and the DOJ.

**IT IS SO ORDERED.**